ROBERT MADDEN HILL, Circuit Judge:
 

 S.I. Acquisition, Inc. (S.I.A.), a debtor in chapter 11 bankruptcy reorganization, appeals complaining that the district and bankruptcy courts erred in deciding that a state court action by a creditor of S.I.A.’s, Eastway Delivery Service, Inc. (Eastway), brought against S.I.A. and three nonbank-rupt defendants based upon the alter ego doctrine was not stayed by 11 U.S.C. § 362 as to the nonbankrupt defendants. Finding that Eastway's action against the non-bankrupt defendants was stayed, we reverse.
 

 I.
 

 In December 1984 Eastway and S.I.A. entered into a contract under which East-way was to provide delivery services for S.I.A. in Houston, Texas, and S.I.A. would compensate Eastway pursuant to a negotiated rate schedule. By March 1985 S.I.A. was delinquent in paying Eastway as agreed under the contract terms.
 

 
 *1144
 
 After several demands for payment were made, partial payment was remitted to Eastway. A payment was made to East-way by a check drawn on an account owned by Abel Contract Furniture & Equipment Co., Inc., d/b/a Abel Interiors
 
 &
 
 Stationers (Abel). A second payment was made to Eastway from the same account.
 
 [1]
 
 As a result of these payments, Eastway continued to supply S.I.A. with delivery services, but no further payments from S.I.A. or Abel were forthcoming.
 

 On August 9, 1985, Eastway filed an action in the 165th District Court of Harris County, Texas, to recover the balance due under its contract with S.I.A. and damages. Eastway’s state court action named as defendants, S.I.A., Abel, TPO, Inc. (TPO), and Thomas P. O’Donnell, the registered agent of all three corporations. Eastway alleged that S.I.A. was liable on the contract and that Abel, TPO, and O’Donnell were accountable for S.I.A.’s debts because S.I.A. was completely controlled by Abel, TPO, and O’Donnell. Specifically, Eastway alleged:
 

 “that Defendant S.I.A. and Defendant ABEL are in fact owned and controlled by Defendant TPO, INC., ... that Defendants TPO, INC., S.I.A. and ABEL are liable on the contract sued upon herein for the reason that S.I.A. and ABEL are but conduits by which the parent corporation, TPO, INC. does business, and that S.I.A. and ABEL operate functionally as arms or departments of the Defendant TPO, INC. This arrangement is used merely as a cloak to conceal fraud, wrongs, and injustice, and to insulate TPO, INC. from legal and financial responsibility for wrongs committed by S.I.A. and other subsidiaries_ [A]nd that Defendants S.I.A., ABEL, and TPO, INC. are but alter egos for the personal business affairs of Defendant THOMAS P. O’DONNELL ... and that THOMAS P. O’DONNELL’S control and domination of Defendants S.I.A., ABEL, and TPO, INC. exists to the extent that said purported corporations’ actions are in substance the actions of Defendant THOMAS P. O’DONNELL.”
 

 Soon after Eastway initiated its state court action, S.I.A. filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. Eastway responded to S.LA.’s bankruptcy filing by severing S.I.A. from its state court action because 11 U.S.C. § 362(a)(1) automatically stayed the proceeding against S.I.A.
 
 See Wedgeworth v. Fibreboard Corp.,
 
 706 F.2d 541, 544 (5th Cir.1983) (party that files bankruptcy may be severed from state court action to avoid stay violation).
 

 Following S.I.A.’s severance, Eastway next served written interrogatories in its state court action. The interrogatories were served on only the remaining non-bankrupt defendants Abel, TPO, and O’Donnell. The interrogatories delved into the financial and control relationship between the three corporations and O’Donnell. In response S.I.A. filed a motion to show cause in the bankruptcy court as to why Eastway should not be held in contempt for violating the automatic stay provisions of section 362.
 

 While S.I.A.’s motion to show cause was pending, on October 25, 1985, Abel filed for relief under chapter 11 of the Bankruptcy Code. On December 1, 1985, S.I.A. requested the bankruptcy court consolidate its reorganization proceedings with those of Abel. S.I.A.’s Motion for Substantive Consolidation asserted that S.I.A. and Abel were wholly-owned subsidiaries of TPO, that they operated from a central office, that they shared a central line of credit with a secured lender, that inventory owned by one company was sold at retail by the other, and that assets of each were commingled in bank accounts. In February 1986 the court substantively consolidated the S.I.A. and Abel bankruptcy eases.
 
 [2]
 

 
 *1145
 
 On November 22, 1985, the bankruptcy court held a hearing on S.I.A.’s motion to show cause. S.LA.’s motion sought to hold Eastway in contempt for violating the stay provision of section 362 by serving interrogatories on Abel, TPO, and O’Donnell. The issue before the court, therefore, was whether the automatic stay provision of section 362 applied to bar further proceedings against nonbankrupt defendants in a state court action premised on piercing the corporate veil of the debtor, S.I.A. S.I.A. argued that the automatic stay applied to all defendants in Eastway’s state court action because Eastway’s alter ego claims alleged the defendants were one in the same. Eastway responded that the stay did not prohibit further prosecution against the nonbankrupt defendants because the debtor was no longer part of the state action.
 

 On March 12, 1986, the bankruptcy court entered an order denying S.I.A.’s motion, accompanied by a memorandum opinion. In its opinion, the court concluded that Eastway’s state court action against the nonbankrupt defendants was not stayed by section 362.
 
 See In re S.I. Acquisition, Inc.,
 
 58 B.R. 454 (Bankr.W.D.Tex.1986).
 

 The bankruptcy court’s judgment rests on two separate conclusions. First, the court found that Eastway’s alter ego action was not “a claim assertable by the debtor-in-possession S.I.A. or a trustee in bankruptcy under 11 U.S.C. § 544.”
 
 Id.
 
 at 462. Secondly, since the alter ego claim could not have been brought by the debtor or trustee, the court found that it was not property of S.I.A.’s bankruptcy estate.
 
 Id.
 
 at 459 (relying upon
 
 American National Bank of Austin v. MortgageAmerica Corp. (In re
 
 MortgageAmerica), 714 F.2d 1266 (5th Cir.1983)). The court thus concluded that the stay provision oí section 362 did not apply to Eastway’s cause of action against the nonbankrupt defendants. Id. at 462.
 

 Pursuant to 28 U.S.C. § 158(a), S.I.A. appealed the bankruptcy court’s judgment to the district court. The district court affirmed the bankruptcy court’s decision without opinion. From the district court’s order, S.I.A. filed an appeal to this court. We have jurisdiction pursuant to 28 U.S.C. § 158(d).
 

 II.
 

 The issue presented for our review is a relatively simple one to state: What is the scope of the automatic stay provided for in section 362 of the Bankruptcy Code, 11 U.S.C. § 362? But as is often true, a simply stated question may elicit a difficult and complex answer. We find that to be the case here. We supply our response to the issue below, hopefully with as little obtuseness as possible, but first we set out the relevant law that will guide our deci-sionmaking process.
 

 A.
 

 We begin with the Bankruptcy Code contained in title 11 of the United States Code and section 362. The automatic stay provision in section 362 reads in relevant part:
 

 Except as provided in subsection (b) of this section, a petition filed under sections 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—
 

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 

 [[Image here]]
 

 
 *1146
 
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
 

 * * * # * *
 

 11 U.S.C. §§ 362(a)(1), (3).
 

 The automatic stay provision of section 362 is a key component of federal bankruptcy law. In a chapter 11 reorganization proceeding, the stay prevents the dissipation or diminution of the bankrupt’s assets while rehabilitative efforts are undertaken and prohibits the proliferation of numerous claims in different forums against the debt- or. The legislative history of section 362(a) underscores its importance:
 

 The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
 

 The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly [reorganization or] liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor’s assets prevents that.
 

 H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 340 (1978),
 
 reprinted in
 
 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6297-98.
 
 See also
 
 S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978),
 
 reprinted in
 
 1978 U.S. Code Cong. & Admin. News 5787, 5835-36, 5840-41. The automatic stay thus imposes a moratorium on all actions against the debtor or its property and assets. It ensures a respite for the debtor so that it may attempt to reorganize or decide to liquidate and promotes the overriding bankruptcy policy of equal distribution of a debtor’s assets among creditors.
 
 See GATX Aircraft Corp. v. M/V COURTNEY LEIGH,
 
 768 F.2d 711, 716 (5th Cir.1985).
 

 The automatic stay provisions relevant to this appeal are section 362(a)(1) and (3), as quoted above. We turn now to judicial constructions of these sections to determine the scope of the stay provided by each.
 
 [3]
 

 
 *1147
 
 1.
 

 Section 362(a)(1) provides for an automatic stay of any judicial “proceeding against the
 
 debtor.”
 
 11 U.S.C. § 362(a)(1) (emphasis added). In
 
 Wedgeworth v. Fibreboard Corp.,
 
 706 F.2d 541 (5th Cir.1983), we stated that a section 362(a)(1) stay is available only for the debtor’s benefit and does not prohibit actions against nonbankrupt third parties or codefendants. In
 
 Wedgeworth
 
 the debtors Unarco and Johns-Manville sought bankruptcy protection after thousands of asbestosis actions had been filed against them and other alleged joint tort-feasors. The joint tortfeasors claimed that section 362(a)(1) stayed the actions against them as well as the bankrupts. We concluded that extending the automatic stay to nonbankrupt defendants, who were not related to or components of the debtors, did not advance the underlying purposes of the stay.
 
 Id.
 
 at 544.
 
 Accord GATX Aircraft Corp. v. M/V COURTNEY LEIGH,
 
 768 F.2d 711, 716 (5th Cir.1984) (state court action against nonbankrupt co-guarantors was not stayed because other co-guarantors filed bankruptcy).
 
 [4]
 

 The other circuits that have interpreted the scope of a section 362(a)(1) stay agree that it is not available for the benefit of nonbankrupt codefendants because such an extension of the stay does not promote the underlying purposes of the automatic stay provision, i.e., debtor/creditor protection.
 
 See Teachers Insurance and Annuity Association of America v. Butler,
 
 803 F.2d 61, 65 (2d Cir.1986);
 
 Fortier v. Dona Anna Plaza Partners,
 
 747 F.2d 1324, 1329-30 (10th Cir.1984);
 
 Williford v. Armstrong World Industries, Inc.,
 
 715 F.2d 124, 126-27 (4th Cir.1983);
 
 Lynch v. Johns-Manville Sales Corp.,
 
 710 F.2d 1194, 1196-97 (6th Cir.1983);
 
 Austin v. Unarco Industries, Inc.,
 
 705 F.2d 1, 4-5 (1st Cir.),
 
 cert. denied,
 
 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983);
 
 Pitts v. Unarco Industries, Inc.,
 
 698 F.2d 313, 314 (7th Cir.1983) (per curiam).
 
 [5]
 

 Several courts, however, have recognized that in very limited situations a section 362(a)(1) stay may apply to actions against nonbankrupt defendants.
 
 See Teachers Insurance,
 
 803 F.2d at 65;
 
 In re Johns-Manville Sales Corp.,
 
 33 B.R. 254, 263-64 (Bankr.S.D.N.Y.1983);
 
 In re Old Orchard Investment Co.,
 
 31 B.R. 599, 603 (Bankr.W.D.Mich.1983);
 
 In re Johns-Manville Sales Corp.,
 
 26 B.R. 405, 410 (Bankr.S.D.N.Y.1983);
 
 In re Otero Mills, Inc.,
 
 25 B.R. 1018, 1020-21 (Bankr.D.N.M.1982).
 
 See also In re Metal Center,
 
 31 B.R. 458, 462 (D.Conn.1983). These courts have reasoned that a nonbankrupt codefendant may be protected by the automatic stay of section 362(a)(1) if extension of the stay contributes to the debtor’s efforts of rehabilitation or the debtor and nonbankrupt are closely related.
 

 The Fourth Circuit has most recently explained when a nonbankrupt codefendant should benefit from a section 362(a)(1) stay.
 
 See A.H. Robins Co., Inc. v. Piccinin,
 
 788 F.2d 994, 999 (4th Cir.1986). In
 
 Robins
 
 the court stated:
 

 “[TJhere are cases [under 362(a)(1) ] where a bankruptcy court may properly stay the proceedings against non-bankrupt codefendants” but ... in order for relief for such non-bankrupt defendants to be available under (a)(1), there must be “unusual circumstances” and certainly “[sjomething more than the mere fact
 
 *1148
 
 that one of the parties to the lawsuit has filed Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties.” This “unusual situation,” it would seem arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.
 

 A.H. Robins,
 
 788 F.2d at 999 (quoting in parts
 
 In re Johns-Manville Sales Corp.,
 
 26 B.R. 405, 410 (Bankr.S.D.N.Y.1983)). While recognizing the general rule that a section 362(a)(1) stay applies only to actions against the debtor, the Fourth Circuit explained that when the liability of the non-bankrupt is not independent of the debtor’s liability and a judgment against the non-bankrupt will be binding upon the debtor’s estate, the stay protection must be extended to encompass actions against the non-bankrupt.
 
 Id.
 
 at 999 (citing
 
 In re Metal Center,
 
 31 B.R. 458, 462 (D.Conn.1983)).
 

 In summary, a section 362(a)(1) stay generally applies only to bar proceedings against the debtor, but some courts have recognized that in circumstances where the debtor and the nonbankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend an action against a nonbankrupt codefendant.
 

 2.
 

 Section 362(a)(3) provides that the filing of a petition “operates as a[n] [automatic stay] applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate.” 11 U.S.C. § 362(a)(3). Section 362(a)(3) thus implements a stay of any action, whether against the debtor or third parties, that seeks to obtain of exercise control over the property of the debtor. We discussed the scope of a section 362(a)(3) stay in
 
 In re MortgageAmerica,
 
 714 F.2d 1266 (5th Cir.1983). Since the parties on appeal (and in the courts below) strenuously debate the meaning of
 
 In re MortgageAmerica
 
 and since the construction of this opinion is crucial to resolving this appeal, we take time to thoroughly examine this decision.
 

 In re MortgageAmerica
 
 originally began as a state court action in which the American National Bank of Austin (the Bank) obtained a jury verdict of approximately $200,000 against MortgageAmerica Corp. In attempting to collect the judgment it had gained, the Bank discovered that Mort-gageAmerica was nearly insolvent. Not to be deterred, the Bank initiated a separate action against Joe R. Long, the sole stockholder of MortgageAmerica and the only person who controlled MortgageAmerica. In its action against Long, the Bank asserted three causes of action based upon the corporate trust fund doctrine, the denuding the corporation theory, and the Texas Fraudulent Transfers Act, Tex.Bus. & Com. Code Ann. §§ 24.02-.03 (Vernon 1968). Each cause of action rested upon allegations that Long had caused Mortga-geAmerica to transfer its assets to Long or to third parties for Long’s personal benefit.
 
 [6]
 

 Following the initiation of the Bank’s action against Long, MortgageAmerica was forced by several creditors into involuntary bankruptcy under chapter 7 of the Bankruptcy Code. MortgageAmerica asserted that the protection of the automatic stay extended to the proceedings against Long. The Bank responded by arguing that its proceeding against Long seeking to hold him accountable for the judgment against the debtor MortgageAmerica was not stayed. The Bank reasoned that the three causes of action could only be asserted by the debtor’s creditors for their individual benefit and not by MortgageAmeri-ca; that the three causes of action were therefore not “property of the estate”; and
 
 *1149
 
 thus, the assertion of these actions by the Bank was not stayed.
 

 On appeal we were confronted with the issue of whether the automatic stay of section 362(a)(3) extended to suspend prosecution of the Bank’s action against Long, the control person of the debtor. We held that all three causes of action asserted by the Bank were stayed because property of the debtor estate was involved.
 
 Id.
 
 at 1277.
 

 In writing for the court in
 
 In re MortgageAmerica
 
 Judge Randall began by noting that the key term in section 362(a)(3) is “property of the estate.” The property of the estate is broadly defined in section 541(a)(1) of the Bankruptcy Code, which provides in pertinent part: “The commencement of a case under section 301, 302, or 303 of this title ... creates an estate ... comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). We reasoned in
 
 MortgageAmerica
 
 that “[t]he scope of the automatic stay under section 362(a)(3) thus depends both upon the policies expressed in the Bankruptcy Code, considered as a whole, and upon the particular meaning of the phrase ‘all legal or equitable interests of the debtor in property.’ ” 714 F.2d at 1273. The court also stated that the term “all legal and equitable interests of the debtor in property” is all-encompassing and includes rights of action as bestowed by either federal or state law.
 
 Id.
 
 at 1274.
 

 We next observed that the overall purpose of a section 362 stay (as noted earlier in this opinion) was to give the debtor and its property a “breather” from creditors’ assaults, to prevent “a multi-jurisdictional rush to judgment” by numerous creditors, and to ensure that the interests of all creditors of similar station were treated equally and fairly.
 
 Id.
 
 at 1274.
 

 With these preliminary remarks, we proceeded in
 
 In re MortgageAmerica
 
 to decide the nature of the three causes of action asserted by the Bank under Texas law and whether any could be considered as involving property of the estate. After reviewing Texas authority on the nature of the corporate trust fund doctrine and the denuding doctrine, we concluded that they were similar avenues of recovery and were rights of action assertable by the debtor MortgageAmerica itself, not just a creditor.
 
 Id.
 
 at 1268-72.
 
 [7]
 
 We stated in summary:
 

 Section 362(a) of the Code provides that the automatic stay prohibits “any act to obtain possession of property of the estate,” and the legislative history to section 541(a) makes clear that that section’s reference to “all legal or equitable interests of the debtor in property” implicitly incorporates by reference all “rights of action” described in section 70(a) of the old Bankruptcy Act. The term “rights of ’action” in turn necessarily depends upon the state (or federal) law creating those rights. For our purposes, this means that the scope of the automatic stay under section 362 depends upon how Texas courts would characterize a cause of action under the trust fund (denuding) theory. If an action under that theory belongs, under Texas law, to the corporation, then the action is “property of the estate” and the bank may not pursue it.
 

 We think ... that under Texas law a cause of action under the trust fund (denuding) theory is in the right of the corporation, though, to be sure, that right is assertable (and usually is asserted) by the corporation’s creditors.
 

 [[Image here]]
 

 Although a trust fund (denuding) action — as the bank has repeatedly reminded us — is usually brought by creditors and is assertable by them, it does not belong to them in any absolute sense.
 
 *1150
 
 The bank’s repeated assertion that the contrary is true is simply wrong. Under Texas law the action is in the right of the corporation and, as such, is “property of the estate within the meaning of section 541(a)(1) of the Code. The automatic stay therefore applies.
 

 Id.
 
 at 1276-77 (footnotes omitted).
 

 In addressing the Fraudulent Transfer action, we held that under Texas law this cause of action was assertable only by a creditor and did not belong to the debtor corporation.
 
 Id.
 
 at 1272-73. Even though this claim therefore could not be treated like the other two actions, we nevertheless held that it also was stayed pursuant to section 362(a)(3). Our reasoning was that while the defendant in the state court action was not the debtor, but a control person of the debtor, the creditor’s suit sought to recover property of the debtor’s estate. This conclusion was based on our finding that the debtor MortgageAmeriea retained a legal or equitable interest in the property fraudulently transferred to Long or to third parties for Long’s benefit.
 
 Id.
 
 at 1275.
 
 [8]
 

 We also noted that our decision was consistent with general bankruptcy policies:
 

 This result does the most to further the fundamental bankruptcy policy of equitable distribution among creditors.
 

 * }¡e sk s(c sfc
 

 Actions for the recovery of the debtor’s property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent upon it, and therefore are appropriately stayed under section 362(a)(3). Any other result would produce near anarchy when the only discernible organizing principle would be first-come-first-served.
 

 Id.
 
 at 1275-76.
 

 In summary, we distill three guiding principles from our decision in
 
 In re
 
 MortgageAmerica:
 
 [9]
 

 (1) a section 362(a)(3) stay applies to a cause, of action that under state (or federal) law belongs to the debtor;
 

 (2) a section 362(a)(3) stay applies to a cause of action that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debt- or; and
 

 (3) in applying the above rules we do so by
 

 keeping in mind the Bankruptcy Code’s general policies of securing and preserving the debtor’s property and of ensuring equal distribution of the debtor’s assets to similarly-situated creditors.
 

 With these legal principles in mind we accordingly proceed to the issue presented in this appeal.
 

 III.
 

 The issue presented is whether the prosecution of a state court suit that is premised solely upon the theory that the defendants therein are the controlling entities or persons of a chapter 11 debtor (and thus accountable for the debtor’s debts) is automatically stayed as to all parties involved by section 362(a)(1) or (3) upon the filing of the debtor’s bankruptcy petition. We an
 
 *1151
 
 swer this question in the affirmative, finding that section 362(a)(3) automatically stayed Eastway’s state court action.
 
 [10]
 

 Despite Eastway’s protestations to the contrary, we begin our section 362(a)(3) analysis with the analytical framework established by
 
 In re MortgageAmerica.
 
 Eastway contends that
 
 In re MortgageAmerica
 
 is strictly limited to cases involving fraudulent transfers of debtors’ assets, citing as support
 
 Carlton v. BAWW, Inc.,
 
 751 F.2d 781 (5th Cir.1985). Based upon its restrictive reading of
 
 In re MortgageAmer-ica,
 
 Eastway concludes that its cause of action based solely on allegations of alter ego liability should not be analyzed under the teachings of
 
 In re MortgageAmerica.
 
 We reject Eastway’s argument.
 

 In
 
 Carlton
 
 the primary issue was whether diversity of citizenship jurisdiction existed in a judgment creditor’s fraudulent conveyance action, not an interpretation of the scope of a section 362(a)(3) stay. In passing, we stated:
 

 In
 
 In re MortgageAmerica Corp.,
 
 714 F.2d 1266 (5th Cir.1983), we examined the effect of the transferor’s intervening bankruptcy on a creditor’s state-law attempt to void a fraudulent transfer. We held that property the debtor has fraudulently conveyed remains “property of the estate,”
 
 see
 
 11 U.S.C. § 541(a)(1): “The automatic stay under [11 U.S.C.] section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed [by the transfer- or].”
 

 751 F.2d at 785. The importance of
 
 In re MortgageAmerica
 
 in
 
 Carlton
 
 was simply that the stay of the creditor’s fraudulent conveyance action was an important event requiring re-examination of subject matter jurisdiction.
 
 Carlton
 
 makes no interpretation of
 
 In re MortgageAmerica,
 
 and we can discern no explicit or implicit intent on our part in
 
 Carlton
 
 to limit
 
 In re MortgageAmerica
 
 only to fraudulent conveyance situations. We therefore reject Eastway’s overly-restrictive reading of
 
 In re MortgageAmerica
 
 and believe that
 
 In re MortgageAmerica
 
 sets the general framework for all cases that raise the issue of the scope of a section 362(a)(3) stay.
 

 Eastway also argues that the
 
 In re MortgageAmerica
 
 decision itself holds that an alter ego action is not stayed by section 362(a)(3). Eastway cites a portion of footnote 10 in
 
 In re MortgageAmerica
 
 to support its argument. Footnote 10 stated in part:
 

 Similarly, in
 
 Murdock v. Allina, (In re Curtina Int’l),
 
 15 B.R. 993 (Bankr.S.D.N.Y.1981), the bankruptcy court held that it did not have jurisdiction under 28 U.S.C. § 1471 to adjudicate a claim brought by the plaintiff-creditor directly against two corporate officers and shareholders on an alter ego (“piercing the corporate veil”) theory. That fact situation, too, is far removed from the present one.
 

 In re MortgageAmerica,
 
 714 F.2d at 1277 n. 10. We again must disagree with Eastway’s position. We distinguished
 
 In re Curtina
 
 in
 
 In re MortgageAmerica
 
 because it did not involve either an application or construction of the automatic stay provision, and, therefore, it was not relevant to
 
 In re
 
 MortgageAmerica’s discussion of the scope of a section 362(a)(3) stay. The language of footnote 10 does not suggest that we made any decision on whether an alter ego action by a creditor against control persons of a debtor was stayed by section 362(a)(3).
 

 Having decided that
 
 In re MortgageAmerica
 
 supplies the analytical scheme for determining whether section 362(a)(3) applies, we thus ask its two important questions:
 

 (1) does Eastway’s cause of action based on alter ego under Texas law belong to the corporate debtor, S.I.A.; or
 

 (2) does Eastway’s cause of action based on alter ego seek to recover or control property of the debtor, S.I.A.?
 

 
 *1152
 
 We answer the first question in the affirmative and therefore need not decide the second. In doing so we apply the third guiding principle distilled from
 
 In re MortgageAmerica
 
 —to keep in mind the general policies of the Bankruptcy Code of securing and preserving the property of the debtor and of ensuring to creditors who are similarly situated the equal distribution of the debtor’s assets.
 

 A.
 

 Under Texas law an alter ego remedy
 
 [11]
 
 is one distinct method of piercing the corporate veil.
 
 See Castleberry v. Branscum,
 
 721 S.W.2d 270, 272 (Tex.1986) (alter ego is one of six distinct methods of piercing corporate veil). Based upon equitable concerns, an alter ego remedy applies when there is such an identity or unity between a corporation and an individual or another entity such that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust.
 
 [12]
 

 Id.
 
 at 272;
 
 see also Valdes v. Leisure Resource Group, Inc.,
 
 810 F.2d 1345, 1352-54 (5th Cir.1987) (discussing Texas law on alter ego). In
 
 Castleberry
 
 the Texas Supreme Court stated:
 

 [An alter ego allegation] is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separate, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.... Alter ego’s rationale is: “if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors.”
 

 721 S.W.2d at 272 (citations omitted). Texas’ alter ego law thus rests upon an identity theory — the corporation and the control person or entity are considered to be a single entity.
 

 The remedy of alter ego under Texas law appears to be available to all creditors of the corporation so long as the requisite melding of the corporation and its control entity are established. The doctrine of alter ego does not rest upon a particular creditor’s dealings with or reliance on the control entity, nor does the doctrine require a showing of fraud on a particular creditor.
 
 See Castleberry,
 
 721 F.2d at 272-73;
 
 see also Edwards Co. v. Monogram Industries, Inc.,
 
 730 F.2d 977, 982-84 (5th Cir.1984).
 

 Of most importance to our decision, however, is whether a corporation could assert an action against itself based upon alter ego. Not surprisingly, we have found no Texas law suggesting that a corporation could or could not itself bring an alter ego claim. Even so, we note that the predominate policy of Texas alter ego law is that the control entity that has misused the corporation form will be held accountable for the corporation’s obligations.
 
 See Castleberry,
 
 721 S.W.2d at 272;
 
 see also Valdes,
 
 at 1353 (alter ego doctrine applies to hold dominant entity responsible for subservient company’s debt since dominant entity was responsible for creating the debts). Since the corporation has an independent existence at law, we do not believe it is inconsistent in light of the above policy to say that a corporation may pierce its own corporate veil and hold accountable those who have misused the corporation in order to meet its corporate obligations.
 

 Another court has reached this same conclusion when construing Nevada alter ego law, which is identical to Texas law.
 
 See
 
 
 *1153
 

 In re Western World Funding, Inc.,
 
 52 B.R. 743 (Bankr.D.Nev.1985). In
 
 In re Western World
 
 the court explained the situation well in stating:
 

 Furthermore, it is not at all clear that a corporation would be forbidden to pierce its own corporate veil in a non-bankruptcy context. There is no inconsistency in allowing such an action. The alter ego doctrine is an equitable remedy which may be invoked for some purposes and not others. It may be utilized when equity requires, such as to protect innocent parties, rather than as a defense to the liability of defaulting fiduciaries. The corporation may be thought of as a separate legal entity which has an interest of its own in assuring that it can meet its responsibility to its creditors, while at the same time allowing it to argue that it should be deemed to be identical to its alleged alter ego for purposes of paying those creditors. There is only a practical — not a legal or logical — difficulty in a corporation’s bringing an alter ego action in its own name: The defendants who so completely dominate the corporation as to constitute its alter ego are not likely to institute an action to determine their own liability for corporate debts. Therefore, it is not surprising that the parties can produce no such case. The corporation needs an independent voice, such as a trustee in bankruptcy, in order to act to protect its creditors.
 

 Id.
 
 at 783 (citations omitted).
 

 Furthermore, our decision that under Texas law a corporation has the right to bring an action based upon alter ego is bolstered by the fact that the Texas Supreme Court has stated that the alter ego remedy, the trust fund doctrine, and the denuding theory (the latter two being the actions stayed in
 
 In re
 
 MortgageAmerica) are similar theories of recovery that attempt to remedy misuse or abuse of the corporate form. While admittedly different in some respects “they serve very similar ideals and principles.”
 
 Castleberry,
 
 721 S.W.2d at 271 n. 1. Since the trust fund and denuding theories were considered to belong to the debtor corporation and were thus stayed in
 
 In re MortgageAmerica,
 
 we feel our decision as to the alter ego remedy is consistent with and carries out the same concerns expressed in the decision in that case. 714 F.2d at 1277-78.
 
 See also
 
 note 7,
 
 supra.
 

 As in
 
 In re MortgageAmerica
 
 we recognize that an action based on alter ego allegations is assertable, and is usually asserted, by the debtor corporation’s creditors. But this fact does not negate our conclusion, as it did not in
 
 In re MortgageAmerica,
 
 that theoretically nothing in Texas law prohibits a corporation from asserting on its own an action based on alter ego and that in fact the underlying policy of the remedy supports this conclusion.
 

 We, therefore, conclude that East-way’s alter ego action is a right of action belonging to S.I.A. and, as such, is “property of the estate” within the meaning of section 541(a)(1). Accordingly, the automatic stay of section 362(a)(3) applies to Eastway’s state action.
 

 B.
 

 We also are of the opinion that our decision that Eastway’s state court action is stayed by section 362(a)(3) carries out the general policies of the Bankruptcy Code. Eastway’s action is not one that is personal to it. Its action is based upon allegations that if proven would benefit all of S.I.A.’s creditors, i.e., making more assets available to satisfy S.I.A. debts. But Eastway is proceeding alone, only for its benefit, and without giving notice to other creditors of S.I.A. Thus it seems clear that to allow Eastway’s actions to proceed would undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly. If Eastway’s action is not stayed it would collect its claim from a pool of assets that should be available to all creditors. But satisfaction of Eastway’s claim will be undiluted by the pro-rata distribution between all creditors that would otherwise occur in bankruptcy court or in a nonbankruptcy forum into which the other creditors could intervene if they knew of Eastway’s action. Thus, not to stay East-way’s action would promote the first-come-
 
 *1154
 
 first-served unequal distribution dilemma that the Bankruptcy Code and
 
 In re MortgageAmerica
 
 sought to prevent.
 

 Secondly, the unchecked prosecution of Eastway’s state court action also abridges the general policy of giving the debtor and its control persons the opportunity to reorganize its finances. Since the control persons of S.I.A. would certainly be actively opposing Eastway’s state court action, their time and efforts in revamping S.I.A. in bankruptcy would be restricted.
 

 Furthermore, if Eastway’s action based upon alter ego may proceed completely outside of bankruptcy, then any creditor of S.I.A. may do likewise. The result is the multi-jurisdictional rush to judgment that we stated in
 
 In re MortgageAmerica
 
 cuts against the fundamental policies of the Bankruptcy Code. We would also be promoting a potential conflict in judgments such that one creditor may convince a court or jury that S.I.A., Abel, TPO, and O’Donnell are all one in the same, while another creditor may not. Problems of collateral estoppel and unfair distribution of debtor assets would clearly abound.
 

 We must, therefore, conclude that based on the Bankruptcy Code policies as a whole and our construction of section 362(a)(3), Eastway’s state cause of action based on alter ego allegations was automatically stayed upon the filing of S.I.A.’s bankruptcy petition.
 
 [13]
 

 IV.
 

 For the reasons stated above, we reverse rthe decisions of the district court and bankruptcy court denying the motion to show cause filed by S.I.A. and remand for further proceedings consistent with this opinion.
 
 [14]
 

 REVERSED and REMANDED
 

 [1]
 

 . Both checks had the payor’s name stamped in. The first bore Abel’s name and address while the second bore S.I.A.’s.
 

 [2]
 

 . We note that the bankruptcy court’s consolidation of the S.I.A. and Abel bankruptcies in effect "pierced the, corporate veil” between the two entities. The bankruptcy court has authority to order
 
 de facto
 
 disregard of the corporate form through consolidation proceedings.
 
 See In re Gulfco Inv. Corp.,
 
 593 F.2d 921, 928-29 (10th
 
 *1145
 
 Cir.1979);
 
 In re Continental Vending Mach. Corp.,
 
 517 F.2d 997, 1000 (2d Cir.1975),
 
 cert. denied,
 
 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976);
 
 Heller v. Langenkamp (In re Tureaud),
 
 59 B.R. 973, 975 (N.D.Okla.1986);
 
 In re Crabtree,
 
 39 B.R. 718, 720 (Bankr.E.D.Tenn.1984).
 

 [3]
 

 . We recognize that beyond the automatic stay provisions of section 362(a)(1) and (3), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105. Section 105 provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 does empower the bankruptcy court to stay proceedings against nonbankrupt entities.
 
 See Wedgeworth,
 
 706 F.2d at 545;
 
 In re Brentano’s,
 
 27 B.R. 90, 92 (S.D.N.Y.1983);
 
 In re Otero Mills,
 
 25 B.R. 1018, 1020 (D.N.M.1982). One court has in fact stayed a creditor’s state court action against a nonbankrupt, alleged alter ego of a bankrupt debtor pursuant to section 105.
 
 See In re N-Ren Corp.,
 
 64 B.R. 773 (Bankr.S.D.Ohio 1986). The decision to stay a proceeding pursuant to section 105 is within the court's discretion and requires "the balancing of relevant interests."
 
 Wedgeworth,
 
 706 F.2d at 545. The party seeking the section 105 stay bears the burden of requesting it and of persuasion on the merits.
 
 Id.
 
 at 541;
 
 see also In re Philadelphia Gold Corp.,
 
 56 B.R. 87 (Bankr.E.D.Pa.1985).
 

 Furthermore, beyond the statutory power authorizing stays, a bankruptcy court has “the inherent power of courts under their general equity powers and in the efficient management of the[ir] dockets to grant a stay.”
 
 Williford,
 
 715 F.2d at 127;
 
 See also Austin,
 
 705 F.2d at 5;
 
 A.H. Robins,
 
 788 F.2d at 1003. In exercising such power the court, however, must weigh competing interests and maintain an even balance between the parties’ concerns and rights. The party requesting the exercise of this inherent power to stay must justify the stay by clear and convincing circumstances outweighing the potential harm to the party against whom it is to be operative.
 
 See Seybolt v. Bio-Energy of Lincoln, Inc.,
 
 38 B.R. 123, 127-28 (D.Mass.1984).
 

 We do not address the propriety of a stay against Eastway’s state court action based upon section 105 or the bankruptcy court’s inherent equitable powers because S.I.A. did not ask the bankruptcy court to act on either of these grounds. Our decision will be limited to whether either section 362(a)(1) or 362(a)(3) automatically stayed Eastway's entire action in Texas state court against the debtor, S.I.A., and its codefendants.
 

 [4]
 

 . In
 
 GATX
 
 we also explained that
 
 Federal Life Ins. Co. of Texas v. First Financial Group of Texas,
 
 3 B.R. 375 (S.D.Tex.1980), did not stand for the proposition that section 362(a)(1) applied to "all judicial proceedings against the debtor in bankruptcy and his codefendants when allegations against them arise from the same factual and legal basis."
 
 GATX,
 
 768 F.2d at 716
 
 (quoting Federal Life,
 
 3 B.R. at 376).
 
 Federal Life
 
 was decided on a joinder of parties issue rather than on an analysis of the scope of a section 362(a)(1) stay. 768 F.2d at 716.
 

 [5]
 

 . Numerous lower court decisions also support the position that generally actions against solvent codefendants are not stayed by an insolvent codefendant’s filing of a bankruptcy petition.
 
 See Royal Trucks & Trailer v. Armadors Meritina Salvadoreana,
 
 10 B.R. 488, 491 (N.D.Ill.1981);
 
 In re Fintel,
 
 10 B.R. 50, 52 (Bankr.Or.1981);
 
 In re Earth Life, Inc.,
 
 9 B.R. 440, 443 (Bankr.M.D.Fla.1981);
 
 In re Smith,
 
 14 B.R. 956, 958 (Bankr.D.C.Conn.1981);
 
 In re Cloud Nine,
 
 3 B.R. 202, 205 (Bankr.D.N.Mex.1980);
 
 In re Trammel Road Townhouses, Ltd.,
 
 5 B.C.C. 314, 316 (N.D.Ga.1977).
 

 [6]
 

 . The Bank claimed specifically that Long caused MortgageAmerica to transfer $100,000 directly to him for his personal use; that Long caused MortgageAmerica to advance $200,000 to another corporation that Long controlled and that this amount was used by Long to meet personal obligations; and, that Long caused MortgageAmerica to transfer $2,000,000 to another bank so as to repay another of Long’s personal obligations.
 

 [7]
 

 . We concluded that the corporate fund doctrine and the denuding theory were actions belonging to the debtor corporation because each action was created for the benefit of the corporation, i.e., to vindicate injury to the corporation caused by improper actions by control persons. 714 F.2d 1270-72. Furthermore, we noted that either cause of action, even if brought by only one creditor, benefited all creditors because each would have an interest in reaching the control persons and in holding them accountable for the corporation’s debts.
 
 Id.
 
 at 1271-72 (each cause of action results in pro-rata distribution of recovery between creditors).
 

 [8]
 

 . We stated in upholding the section 362(a)(3) stay on the fraudulent transfer claim:
 

 The transferee may have colorable title to the property, but the equitable interest — at least as far as the creditors (but not the debtor) are concerned — is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it. We think that when a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a 'legal or equitable interest[ ]’ in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.... The automatic stay under section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed....
 

 Id.
 
 at 1275 (citations omitted).
 

 [9]
 

 . Our decision and analysis in
 
 In re MortgageAmerica
 
 has been cited with approval by several courts and represents the accepted interpretation of the scope of section 362(a)(3) stays.
 
 E.g., Delgado Oil Co., Inc. v. Torres,
 
 785 F.2d 857, 861 (10th Cir.1986);
 
 In re Central Heating & Air Conditioning, Inc.,
 
 64 B.R. 733, 735-37 (N.D.Ohio 1986).
 
 See also Cumberland Oil Corp. v. Thropp,
 
 791 F.2d 1037, 1042 (2d Cir.1986).
 

 [10]
 

 . Since we find that section 362(a)(3) applies to stay Eastway’s state action, we find it unnecessary to address the issue of whether section 362(a)(1) could also be interpreted to stay East-way’s state action against the nonbankrupt entities or persons.
 

 [11]
 

 . Under Texas law It is proper to refer to an alter ego claim as a remedy rather than a cause of action because the fact that a corporation may be an alter ego of a control entity does not create a substantive cause of action against either the corporation or control entity.
 
 See Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.,
 
 456 S.W.2d 476, 480 (Tex.Civ.App.—Fort Worth 1970, no writ).
 

 [12]
 

 . As previously noted, the bankruptcy court in effect made a finding of nonseparateness between S.I.A. and Abel when it consolidated the bankruptcy proceedings for these two debtor corporations.
 
 See
 
 note 2,
 
 supra.
 

 [13]
 

 . We note that Eastway is not left without recourse. Two avenues of actions come to our mind. First, Eastway could ask the bankruptcy court to lift the automatic stay as allowed by 11 U.S.C. § 362(d).
 
 See also In re River Hills Apartments Fund,
 
 813 F.2d 702 (5th Cir.1987). This would ensure that all of S.I.A.’s creditors would receive notice of Eastway’s allegations and hopefully prevent any preferential benefit to any one creditor.
 

 Secondly, we believe Eastway could request the bankruptcy court to make the defendants in the state court action parties to the bankruptcy proceedings through the court’s power of substantive consolidation.
 
 See In re Tureaud,
 
 59 B.R. 973 (N.D.Okla.1986);
 
 In re Crabtree,
 
 39 B.R. 718 (Bankr.E.D.Tenn.1984).
 

 In noting these possibilities we express no opinion on the merits of such actions and do not mean to inhibit Eastway from taking any other action it may wish to pursue.
 

 [14]
 

 . We express no opinion as to whether East-way’s actions can be characterized as contumacious. The bankruptcy court never actually reached this issue since it concluded Eastway’s action against the alter egos was not stayed. Even though we hold that the action was stayed, we believe the question of contumacious conduct is best left in the first instance to the bankruptcy court, if the matter is again raised.