(No.74725

*In re* REHABILITATION OF CENTAUR INSURANCE COMPANY (Stephen F. Selcke, Appellant, v. Hartford Fire Insurance Company *et al.*, Appellees).

*Opinion filed February 3, 1994.*

McMORROW, J., took no part.

James R. Stinson, Susan A. Stone and Ellen S. Robbins, of Sidley & Austin, and Peter G. Gallanis, Dale A. Coonrod and J. Kevin Baldwin, all of Chicago, for appellant.

James I. Rubin, Robert N. Hermes, Ellen M. Babbitt and Samuel W. Ach, of Butler, Rubin, Saltarelli, Boyd & Krasnow, of Chicago, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

The Director of Insurance of the State of Illinois (Director) appeals the appellate court's decision denying him, as rehabilitator of Centaur Insurance Company (Centaur), the right to assert an alter ego action on behalf of Centaur against Centaur's parent, Borg-Warner corporation (Borg-Warner). We granted the Director's petition for leave to appeal (134 Ill. 2d R. 315).

## FACTS

The facts of the case are not in dispute. Centaur is a wholly owned subsidiary of Borg-Warner which Borg-Warner formed in 1974 to act as its insurer. Centaur also issued insurance and reinsurance policies to other

entities not affiliated with Borg-Warner. Various Hartford companies (Hartford) entered into numerous reinsurance contracts with Centaur from 1981 through 1984. Centaur began to default on its obligations to Hartford in 1984.

In September 1987, the Director began rehabilitation proceedings against Centaur in the circuit court of Cook County. On September 4, 1987, the Director was appointed rehabilitator of Centaur and ordered to assume control of Centaur's business and assets. Also on September 4, 1987, the court entered an order enjoining suits against any current or former shareholders of Centaur. This moratorium was subsequently lifted at the Director's request on January 27, 1988.

After the moratorium was lifted, Hartford filed suit against Borg-Warner in the United States District Court for the Northern District of Illinois. The suit sought to hold Borg-Warner liable for Centaur's reinsurance obligations to Hartford, which Hartford claims to be in excess of $29 million. Hartford alleged four theories of recovery in its Federal suit: (1) abuse of corporate structure requiring piercing of Centaur's corporate veil; (2) promissory estoppel; (3) fraud; and (4) reckless misrepresentation. The Federal court dismissed Hartford's complaint without prejudice in an April 17, 1989, memorandum decision citing Federal abstention and ripeness grounds due to the State rehabilitation proceedings then in progress. Hartford moved for reconsideration and the Federal court denied the motion on August 9, 1989. In its order denying reconsideration, the court found that Hartford lacked standing to pursue its alter ego claim against Borg-Warner. (Hartford Casualty Insurance Co. v. Borg-Warner Corp. (N.D. Ill. April 17, 1989), No. 88—C0—783.) The court, relying on the Federal decision *Koch Refining v. Farmers Union Central Exchange, Inc.* (7th Cir. 1987), 831 F.2d 1339, determined that the alter

ego action belonged to all of Centaur's creditors and thus should be brought only by the Director. The Federal court of appeals affirmed the dismissal without prejudice on Federal abstension principles on September 18, 1990. *Hartford Casualty Insurance Co. v. Borg-Warner Corp.* (7th Cir. 1990), 913 F.2d 419.

After the dismissal of Hartford's Federal complaint, Hartford filed a declaratory judgment action against Borg-Warner on October 29, 1990, in the circuit court of Cook County. This State court action alleged the same four theories of recovery that were the basis of Hartford's Federal court complaint. On May 8, 1991, the Director filed a motion to intervene in Hartford's action. The Director sought to have Hartford's action dismissed and argued that he, as the rehabilitator of Centaur, was the proper party to bring Hartford's four claims. In response to this motion, Hartford asked the court to declare that the Director had no standing to pursue Hartford's claims against Borg-Warner.

The trial court ruled on October 17, 1991, that Hartford had the right to assert the alter ego and promissory estoppel claims against Borg-Warner. However, the court also ruled that the Director had standing to pursue Hartford's fraud and reckless misrepresentation claims.

The Director appealed only the trial court's finding concerning the alter ego claim, and Hartford appealed the trial court's ruling on the fraud and reckless misrepresentation claims. The appellate court ruled in Hartford's favor on all claims. The court held that the Director could not pursue the alter ego claim because a "subsidiary corporation cannot pierce its own corporate veil to reach a parent corporation." 238 Ill. App. 3d 292, 300.

The Director asks this court to review only the alter ego issue. Thus, the question we now address is whether

the Director, as rehabilitator of Centaur, has standing to assert an alter ego action against Centaur's parent, Borg-Warner. We conclude that he does not and affirm the appellate court.

## I.

### DIRECTOR'S RIGHTS

"[A] [rehabilitator] derives his authority from statute, and cannot act in contravention of or beyond the statute ***." (19A J. Appleman & J. Appleman, Insurance Law & Practice § 10682, at 121 (rev. ed. 1982).) Article XIII of the Insurance Code (Code) details the Director's authority to act as rehabilitator of an insolvent insurance company:

"The Director *** shall be vested by operation of law with the title to all property, contracts and rights of action *of the company* as of the date of the order directing rehabilitation ***." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 73, par. 803.)

Section 192 of the Code authorizes the Director to:

"deal with the property and business *of the company* in his name *** or in the name of the company." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 73, par. 804(2).

It is thus clear that the Code grants the Director only those rights the insolvent company had as of the date of the order directing rehabilitation. The Code does not provide the Director with the right to assert claims of the insolvent corporation's creditors.

Moreover, this court has previously noted:

"We understand the rule to be, that where a receiver is appointed for the purpose of taking charge of the property and assets of a corporation, he is, for the purpose of determining the nature and extent of his title, regarded as representing only the corporate body itself, and not its creditors or shareholders *** [.] *** [F]or purposes of litigation, he takes *only the rights of the corporation such as could be asserted in its own name*, and that upon that basis, only, can he litigate for the benefit of either

shareholders or creditors." (Emphasis added.) (*Republic Life Insurance Co. v. Swigert* (1890), 135 Ill. 150, 167.) This court further recognized in *Republic Life Insurance* that while a receiver may be thought of as a trustee for creditors and stockholders, " 'this only proves that they are the beneficiaries of the fund in his hands, without indicating the sources of his title or the extent of his powers.' " *(Republic Life Insurance,* 135 Ill. at 168, quoting *Curtis v. Leavitt* (1857), 15 N.Y. 9, 44.) Thus, the Director as rehabilitator of an insolvent insurance company has only those rights the company had as of the date of rehabilitation, and, while the creditors are the beneficiaries of his actions, the Director is not authorized to assert creditors' claims on behalf of the creditors.

## II.

### A CORPORATION'S ALTER EGO ACTION

We now must answer the question of whether, in Illinois, a corporation may bring an alter ego action against its parent shareholder, piercing its own corporate veil in the process. If a corporation is so allowed, then the alter ego claim is property of the company and the Director as rehabilitator may assert the action against Borg-Warner. If not, then the Director may not bring the alter ego claim. We conclude that a corporation may not assert an alter ego action against its own shareholders.

A corporation is a legal entity separate and distinct from its shareholders, directors, and officers. (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 204.) The same applies even where one corporation wholly owns another and the two have mutual dealings. (*Dregne v. Five Cent Cab Co.* (1943), 381 Ill. 594, 603.) However, this separate and distinct legal entity will be disregarded, and the corporate veil pierced, where a subsidiary is so

organized and controlled, and its affairs so conducted by a parent, that observance of the fiction of separate identities would sanction a fraud or promote injustice under the circumstances. *Main Bank*, 86 Ill. 2d at 205.

The Director argues that no Illinois decision prohibits a corporation from asserting an alter ego action against its own shareholders, but that a recent appellate decision determined that a corporation could bring such an action. (*Aspling v. Ferrall* (1992), 232 Ill. App. 3d 758.) The Director further argues that several Federal and State decisions have reached the same conclusion. See *Koch Refining*, 831 F.2d 1339; *St. Paul Fire & Marine Insurance Co. v. Pepsico, Inc.* (2d Cir. 1989), 884 F.2d 688; *In re S.I. Acquisition, Inc.* (5th Cir. 1987), 817 F.2d 1142; *Corcoran v. Frank B. Hall & Co.* (1989), 149 A.D.2d 165, 545 N.Y.S.2d 278.

The alter ego doctrine was developed for and has been traditionally used by third persons injured due to their reliance on the existence of a distinct corporate entity. As one authority has noted:

> "The doctrine of alter ego fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and *such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation.* The corporate form may be disregarded only where equity requires the action to assist a third party." (Emphasis added.) 1 W. Fletcher, Private Corporations § 41.10, at 615 (rev. ed. 1990).

"Generally, the corporate veil is never pierced for the benefit of the corporation or its stockholders ***." (18 Am. Jur. 2d *Corporations* § 45, at 846 (1985).) And, as another source, in noting that reverse piercing (where the parent company asserts that the subsidiary is not really a separate entity) is not favored, states: "[T]he rules relating to piercing of the corporate veil are designed to protect those relying on the existence of a

distinct corporate entity ***." 18 C.J.S. *Corporations* § 12, at 282 (1990).

We agree with these statements of law and do not expand the doctrines of alter ego and piercing the corporate veil to include a subsidiary's bringing an action against its parent corporation. As one court has noted:

> "[T]he general law mandates that the piercing of a corporate veil must never be made for the benefit of the corporation or its shareholders. It is troublesome, in this court's view, to allow a corporation, through its trustee, to pierce its own veil since it would have the effect of denying the corporation of its own corporate existence." (*In re Dakota Drilling, Inc.* (D.N.D. 1991), 135 Bankr. 878, 884.)

Moreover, we note that the Director, as rehabilitator, is not powerless to assert claims against Borg-Warner. An action by a parent corporation injurious to its subsidiary is actionable as a breach of fiduciary duty. The Director, as rehabilitator, may assert an action for breach of fiduciary duty against Borg-Warner on Centaur's behalf. We further note that creditors are generally not capable of asserting such actions, as they are not owed a duty by a subsidiary's parent corporation. See *Macaluso v. Jenkins* (1981), 95 Ill. App. 3d 461, 469 (officers of corporation owe no fiduciary duty to creditors).

Next, we find the Director's reliance on *Aspling* to be misplaced. *Aspling* held that a creditor of a bankrupt corporation could not assert an alter ego action against the corporation's sole shareholder because the bankruptcy trustee had already brought and settled a similar claim against the shareholder. Moreover, the creditor had received a settlement from the bankruptcy estate. While the *Aspling* decision did note *Koch Refining*'s finding that a corporation in Illinois could assert an alter ego claim against its parent corporation, it did not discuss whether this was the law in Illinois. Instead,

*Aspling* relied on the general finding in *Koch Refining* that the bankruptcy trustee "has the exclusive right to bring an alter ego action against corporate shareholders and fiduciaries." (*Aspling*, 232 Ill. App. 3d at 763.) *Koch Refining* gave three reasons for this general finding, only one of which involved an interpretation of Illinois alter ego law. Thus, we do not find that *Aspling* determined whether in Illinois a corporation has standing to assert an alter ego action against its own shareholders.

The Director also urges this court to accept the reasoning of *Koch Refining* in finding that a bankruptcy trustee could assert an alter ego action against the bankrupt corporation's shareholders. Of the court's three reasons for this finding, the Director argues two are applicable here: (1) under Illinois law, a corporation may bring an alter ego action against its parent corporation, and thus the action is property of the bankruptcy estate which the trustee can pursue; and (2) a bankruptcy trustee has the right to bring general creditor claims on behalf of the creditors. The *Koch Refining* court reached its first conclusion by finding: (1) in Illinois, piercing of the corporate veil is allowed to reach an equitable result; and (2) no Illinois decision has limited the standing of any party to bring such a suit. While the Director urges this court to adopt this reasoning we decline and note one commentator's characterization of the *Koch Refining* opinion as "very hazy *** [involving] a reading of state law [which] fairly tortures the traditional notion that alter ego actions are for the benefit of creditors only and do not belong to the corporation." Epling, *Trustee's Standing to Sue in Alter Ego or Other Damage Remedy Actions*, 6 Bankr. Dev. J. 191, 196.

The *Koch Refining* court's second reason for allowing the trustee to bring an alter ego claim on behalf of the creditors is that the bankruptcy trustee has "creditor

status *** to bring suits for the benefit of the estate and ultimately of the creditors" under section 544 of the Bankruptcy Code (11 U.S.C. § 544 (1988)). (*Koch Refining*, 831 F.2d at 1348.) This creditor status, the court found, applies to general creditor claims rather than personal claims of the creditors. A general claim, according to the court, is a claim common to all the creditors which could be asserted by any one of them, while a personal claim is one which is had only by specific creditors. (*Koch Refining*, 831 F.2d at 1349.) The *Koch Refining* court found the alter ego claim there to be a general claim and thus properly brought by the trustee pursuant to his creditor status. However, in Illinois, as just noted, the Code and Illinois law do not provide the Director with creditor status to assert creditors' claims, whether they be personal or general.

The Director also argues that the decision we adopt today conflicts with the Federal district court's finding that the Director as rehabilitator was the proper party to assert the alter ego claim against Borg-Warner. However, the district court's finding relied on *Koch Refining*'s interpretation of Illinois alter ego law, which we have just concluded is not the law in Illinois.

The Director next notes that other Federal courts have found that subsidiaries may assert alter ego claims against their corporate parents and pierce their own corporate veils in a bankruptcy context. (*St. Paul Fire & Marine Insurance*, 884 F.2d 688; *In re S.I. Acquisition*, 817 F.2d 1142.) While this is true, other Federal cases have concluded otherwise. (See *In re Ozark Restaurant Equipment Co.* (8th Cir. 1987), 816 F.2d 1222 (noting that Arkansas follows the general rule that the corporate veil is not to be pierced for the benefit of the corporation or shareholders); *In re Dakota Drilling*, 135 Bankr. 878.) Moreover, as Epling notes in his article, those Federal courts which have "formulated an emerg-

ing doctrine whereby the alter ego cause of action is determined to be property of the corporation [have done so] through a labored and dubious reading of state law." Epling, 6 Bankr. Dev. J. at 201. See also Boyce, *Koch Refining and In re Ozark: The Chapter 7 Trustee's Standing to Assert An Alter Ego Cause of Action*, 64 Am. Bankr. L.J. 315, 327 (noting that bankruptcy courts "should not grant standing [to trustees to assert alter ego claims] by abrogating state [alter ego] law based on federal policy and equitable considerations").

Next, the Director notes a New York appellate decision which construed New York's insurance insolvency law, which contains language similar to Illinois' Code. The New York insurance statute provided that the liquidator was vested " 'by operation of law with the title to all property, contracts and *rights of action of such insurer* as of the date of the entry of the order so directing ... to liquidate.' " (Emphasis in original.) (*Corcoran*, 149 A.D. 2d at 167, 545 N.Y.S.2d at 280, quoting N.Y. Insurance Law § 7405(b) (McKinney 1985).) The New York court found that the Superintendent of Insurance, as liquidator, could bring an alter ego action against the insolvent corporation's parent and sole shareholder. The *Corcoran* court based its decision on the following: (1) in New York, the Superintendent can assert actions belonging to creditors; and (2) the alter ego action in New York belonged to the insolvent corporation. The court first found that because New York's insurance law specifically gave the Superintendent the right to assert creditor claims in certain situations and has been interpreted to give the Superintendent expansive jurisdiction, the Superintendent could assert the alter ego claim on behalf of the creditors. In Illinois, however, the Director is not given the authority to assert creditors' claims. The *Corcoran* court also interpreted New York law as allowing a corporation

to assert an alter ego action against its parent and cited *Koch Refining* as an example of such an action. However, as explained above, we do not adopt this position in Illinois.

The Director finally argues that our ruling today will have an unfair impact on Centaur's smaller creditors and policyholders. We disagree. The Director first argues that this decision will undercut the general policy objective of the Code of ensuring that all similarly situated creditors are treated equally. The Director believes that small creditors, without the resources of a large creditor, will be forced to pursue alter ego claims on their own. However, as Hartford notes, creditors of all sizes will have to pursue claims for fraud, reckless misrepresentation, or estoppel themselves without the benefit of the Director's involvement. Moreover, while larger creditors may have more incentive to bring suit, and more resources to do so, this is true in any case in our justice system. We further note that the Director is not without power to assert claims against Borg-Warner, having Centaur's right to assert claims for breaches of fiduciary duties. One commentator has noted in this area that the alter ego claim, if had by the trustee or rehabilitator, would be an excess cause of action. This commentator argues that the alter ego claim would succeed or fail with the claim for breach of fiduciary duties because it would involve the same assertions of shareholder misbehavior. (See Wilmore, *The Bankruptcy Trustee: Can An Alter Ego Sue An Alter Ego?*, 65 S. Cal. L. Rev. 705, 732 (1991).) Thus, in a practical sense, it is arguable that there is no need at all for the Director to even assert an alter ego action, as he already has a similar action. However, the alter ego action is needed by the creditors, who do not have standing to bring actions for breaches of fiduciary duties.

The Director also argues that such a decision will

likely create a proliferation of wasteful and potentially inconsistent lawsuits. However, creditors such as Hartford already may pursue other individual claims against third parties such as Borg-Warner which may yield inconsistent results.

Finally, the Director argues that if the appellate court's decision is left to stand, it would effectively strip the bankruptcy trustee of the right to bring an alter ego claim against the debtor's parent shareholder. This is not true, however, as the *Koch Refining* decision was based on three rationales, only one of which was based on an interpretation of Illinois alter ego law.

Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE McMORROW took no part in the consideration or decision of this case.