In re **PETITION OF Rutger SCHIMMELPENNINCK and Wouter J.P. Jongepier, as Curators of the Estate of Harris Adacom Corporation, B.V., Debtor in a Foreign Proceeding.**

Petition of Rutger Schimmelpenninck and Wouter J.P. Jongepier, as Curators of the Estate of Harris Adacom Corporation, B.V., Appellants,

v.

James J. Byrne, Appellee.

No. Civ.A. 3:97–CV–2650.

United States District Court, N.D. Texas, Dallas Division.

April 15, 1998.

brief on December 9, 1997, and Appellants filed a Reply Brief on January 5, 1998. On January 20, 1998, Appellee filed a Motion for Leave to File Surreply Brief, and attached the surreply brief as exhibit A. Appellants seeks a reversal of an Order issued by the Bankruptcy Court which remanded Appellee's state court lawsuit styled *James J. Byrne v. Harris Adacom Network Services, Inc. et al.,* back to the 134th Judicial District, Dallas County, Texas (the "Byrne Lawsuit"). Specifically, Appellants contend that the Bankruptcy Court erred in finding that Appellee's claims based on the single business enterprise and alter ego theories asserted in Count Three of Plaintiff's Fourth Amended Petition in the Byrne Lawsuit were not property of the bankruptcy estate of Harris Adacom Corporation B.V. ("HACBV"). Further, Appellants assert that the Bankruptcy Court erred by denying the Appellants' request for preliminary and permanent injunctive relief, and for declaratory relief. Finally, Appellants also contend that the Bankruptcy Court erred by enjoining Harris Adacom Network Services, Inc., ("HANS") from transferring funds to HACBV until the Byrne Lawsuit is resolved. For the reasons set forth below, the Court is of the opinion that Appellee's motion for leave to file surreply should be GRANTED, and that the ruling of the Bankruptcy Court's rulings should be AFFIRMED.

## BACKGROUND

### I. FACTS

On February 28, 1990, Harris Corporation ("Harris"), sold its data communications business to Adacom Corporation ("Adacom") in exchange for cash, stock and promissory notes payable to Harris ("the Adacom Acquisition"). Following the closing of this transaction, Adacom changed its name to "Harris Adacom Corporation" ("HAC"). James Byrne ("Byrne" or "Appellee"), who had managed Harris' data communications business, became an employee of HAC at the time of

Daniel C. Stewart, Dallas, TX, for Appellants.

John Charles Eichman, Dallas, TX, for Appellee.

### MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court is Appellants' appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Appellants filed its initial brief November 14, 1997, Appellee filed its

the Adacom Acquisition. Soon thereafter, Byrne began acquiring stock in the company, and eventually became the owner of approximately eight percent (8%) of the HAC's stock.

In July 1992, HAC formed HANS as a wholly-owned subsidiary. HAC contributed its North American computer network services and other stock to HANS in exchange for 100% of HANS' stock. In 1993, HAC formed a separate company, HACBV, in the Netherlands. On April 2, 1993, HAC sold to HACBV all of its stock in HANS in exchange for HACBV's assumption of the HAC promissory notes owed to Harris. Following the April 1993 transactions, HAC became the parent of HACBV, and HANS became the wholly-owned subsidiary of HACBV. Byrne maintains that he entered into an agreement with HAC, the Redemption Agreement, in April 1993. Appellants contend that, under the terms of the Redemption Agreement, Byrne agreed to exchange his stock in HAC for stock in HACBV, and HACBV agreed that, upon the sale of HANS, HACBV would redeem Byrne's HACBV stock for consideration having a value of at least $2,900,000.00.

On June 30, 1994, Harris filed a petition in the District Court in Amsterdam, the Netherlands, seeking to have HACBV declared bankrupt (the "Foreign Proceeding"). On July 19, 1994, in the Foreign Proceeding, the District Court of Amsterdam issued a judgment declaring HACBV bankrupt and appointing Appellants Rutger Schimmelpenninck ("RJS") and Wouter J.P. Jongepier ("WJP") as Curators of HACBV. On July 27, 1994, HACBV appointed Byrne as sole director of HANS. Byrne asserts that Harris and RJS requested that he sell HANS as quickly as possible. In addition, Byrne contends that after he reminded Harris and RJS of his right to receive at least $2.9 million for his equity interest in HACBV and his assistance in selling HANS, RJS assured Byrne that he would be "taken care of". In contrast, Appellants claim that RJS, as Curator for HACBV, and Byrne entered into a written agreement (the "August 1994 Agreement") which described both the services Byrne would render for HANS from August 1, 1994 forward, and the compensation HANS would pay Byrne for such services.

On March 1, 1995, HANS sold all of its assets to Genicom Corporation ("Genicom") in exchange for total consideration of approximately $20 million ("Genicom Transaction"). While Appellants admit that Byrne performed services in connection with the Genicom Transaction, they maintain that the services were covered by the August 1994 Agreement, and that Byrne has been fully compensated for those services. Byrne asserts that once the Genicom transaction closed, HANS, Harris and RJS rebuffed his demand for remuneration. On April 12, 1995, HACBV removed Byrne as sole director of HANS.

On August 28, 1995, Appellee filed the Byrne Lawsuit. In his suit, Byrne asserts claims against HANS for breach of contract, fraud and quantum meruit. Byrne alternatively alleges that HANS, HAC and HACBV were operated as a single business enterprise and that HANS therefore is responsible for HACBV and HAC's contractual obligations to Byrne. The single business enterprise theory is based on activity both before and after HACBV was forced into bankruptcy. Byrne asserts claims against Harris for fraud, quantum meruit and tortious interference with a contract. In alternative to the single business enterprise theory, Byrne also asserts fraudulent transfer claims against Harris and Hans.

## II. COURSE OF PROCEEDINGS BELOW

On June 11, 1997, Appellants filed their Petition in the Ancillary Proceeding. Also on June 11, 1997, the Appellants filed a Motion for Status Conference and to Expedite Hearing Upon the Petition. On June 19, 1997, the Court held a status conference regarding the Petition at which

time the Court was informed that the Defendants in the Byrne Lawsuit were planning to remove the Byrne Lawsuit to the Bankruptcy Court. HANS and Harris, Defendants in the Byrne Lawsuit, removed that lawsuit to the Bankruptcy Court on June 20, 1997.

On July 1, 1997, Appellee filed his Motion to Dismiss or to Abstain and a Motion to Remand the Byrne Lawsuit. Appellee also filed his Answer to Petition in a Case Ancillary to a Foreign Proceeding by James J. Byrne.

On July 23, 1997, the Bankruptcy Court made a preliminary ruling granting the Motion to Remand. The Bankruptcy Court concluded that the Ancillary Proceeding was properly commenced and properly before the Bankruptcy Court, but denied the declaratory and injunctive relief requested by the Petition. The Court also entered injunctive relief prohibiting HANS from transferring funds to HACBV until the Byrne Lawsuit is resolved.

On July 29, 1997, the Court entered an order remanding the Byrne Lawsuit. On September 24, 1997, the Court entered an order approving the Petition, denying Appellants' request for declaratory and injunctive relief and enjoining HANS.

## DISCUSSION

### I. STANDARD OF REVIEW

When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by a federal court of appeals. *In re Webb,* 954 F.2d 1102, 1104 (5th Cir.1992). In reviewing conclusions of law on appeal, a *de novo* standard of review is applied. *In re Coutee,* 984 F.2d 138, 140 (5th Cir.1993); *In re Young,* 995 F.2d 547, 548 (5th Cir.1993); *In re Allison,* 960 F.2d 481, 483 (5th Cir. 1992). A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review. *Young,* 995 F.2d at

548, *Allison,* 960 F.2d at 483. These findings are reversed only if, based on the entire evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Id.*

## II. APPELLEE'S MOTION FOR LEAVE

On January 20, 1998, Appellee filed his Motion for Leave to File Surreply. As of the date of this Order, Appellant has filed no response in opposition to Appellee's motion. In the absence of any opposition to this motion, the Court hereby GRANTS Appellee's Motion for Leave to File Surreply.

## III. APPELLANTS' REQUEST FOR DECLARATORY RELIEF

In its first point of error on appeal, Appellants claim that the Bankruptcy Court erred when it denied their request for a declaration that the single business enterprise and alter ego theories, asserted by Appellee in the Byrne Lawsuit, are the property of the HACBV Bankruptcy Estate. Specifically, Appellants maintain that "[t]he Bankruptcy Court denied the requested declaratory relief based upon its mistaken belief that the single business enterprise and alter ego legal theories alleged by Byrne in the Complaint were 'causes of action' and were not governed by the legal principles expressed in the Fifth Circuit's decision in *S.I. Acquisition ".* (Brief of Appellants Rutger Schimmelpenninck and Wouter J.P. Jongepier, as Curators of the Estate of Harris Adacom Corporation B.V., at 13).

### A. Applicability of *S.I. Acquisitions Inc. v. Eastway Delivery Serv., Inc.*

In *S.I. Acquisition Inc. v. Eastway Delivery Serv., Inc.,* 817 F.2d 1142 (5th Cir. 1987), the Fifth Circuit addressed the scope of the automatic stay provision in section 362 of the Bankruptcy Code, 11 U.S.C. § 362.[1] In that case, S.I. Acquisi-

---

1. In the present case, HACBV, the debtor, is     currently in bankruptcy in the Netherlands.

tion, Inc. ("SIA"), had contracted with Eastway Delivery Services, Inc. ("Eastway") for certain services. Upon becoming delinquent in paying for the services, Eastway filed a lawsuit in Texas state court against SIA, and three affiliates of SIA based on the theory that SIA and the affiliates were alter egos of each other. SIA filed a Chapter 11 bankruptcy petition and was severed from the state court action. Following the severance, Eastway continued the lawsuit against the other defendants, and served written interrogatories on SIA's affiliates. SIA then filed a motion to show cause in the bankruptcy court as to why Eastway should not be held in contempt for violating the automatic stay provisions of § 362. The issue at the show cause hearing was whether the automatic stay provision of § 362 applied to bar further proceedings against non-bankrupt defendants in a state court action premised on piercing the corporate veil of the debtor. The bankruptcy court determined that the stay provision did not apply to Eastway's cause of action because the claim was not property of SIA's bankruptcy estate. On appeal, the Fifth Circuit reversed.

In its opinion, the Fifth Circuit explained that the issue in *S.I. Acquisition* was "whether the prosecution of a state court suit that is premised solely upon the theory that the defendants therein are the controlling entities or persons of a chapter 11 debtor (and thus accountable for the debtor's debts) is automatically stayed as to all parties involved by section 362(a)(1) or (3) upon the filing of the debtor's bankruptcy petition." *Id.*, at 1150. Before addressing the merits of the suit, however, the Fifth Circuit set forth three legal principals which provide the analytical scheme

for determining whether the § 362 stay applies:

(1) a section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor;

(2) a section 362(a)(3) stay applies to a cause of action that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor; and

(3) in applying the above rules a court is to keep in mind the Bankruptcy Code's general policies of securing and preserving the debtor's property and of ensuring equal distribution of the debtor's assets to similarly-situated creditors. *Id.*, at 1150.

Applying this framework, the Fifth Circuit determined that "Eastway's alter ego action is a right of action belonging to SIA and, as such, is 'property of the estate' within the meaning of section 541(a)(1)." *Id.*, at 1153. Therefore, the Fifth Circuit concluded, the automatic stay of section 362(a)(3) applied to Eastway's state action. *Id.*

In reaching this conclusion, the Fifth Circuit explained that a central question in their determination was whether a corporation could assert an action against itself based on alter ego. *Id.*, at 1152. While they could find no Texas case on point, the Fifth Circuit specifically noted "that the predominate policy of Texas alter ego law is that the control entity that has misused the corporation form will be held accountable for the corporation's obligations." *Id.* (citations omitted). Given this policy, the Fifth Circuit found that corporation could pierce its own corporate veil to hold accountable those who had misused the corporation. *Id.* Therefore, the Fifth Circuit, concluded that the alter ego right of

---

Consequently, the applicability of § 362 of the Bankruptcy Code is not an issue in this matter. Rather, Appellants contend that since HACBV does not receive the benefit of the § 362 automatic stay, it must affirmatively seek injunctive relief under § 304 of the Bankruptcy Code. Given that the parties do

not dispute that the § 304 injunction is meant to perform the same function as the § 362 automatic stay, the Court concludes that, as a threshold matter, the § 362 stay sought in *S.I. Acquisition* is analogous to the § 304 relief Appellants request in the present action.

action belonged to SIA, and was property of its bankrupt estate, *Id.*, at 1153.

In addition, the Fifth Circuit determined that their decision in *S.I. Acquisition* was consistent with the general policies of the Bankruptcy Code. First, the court found that the action was not personal to Eastway. Rather, if proven, the action would have benefitted all of SIA's creditors. Therefore, the outcome in *S.I. Acquisition* upheld the policy of ensuring that all similarly-situated creditors be treated fairly. Second, staying Eastway's state court action was consistent with the policy of giving the debtor and its control persons an opportunity to reorganize the finances. Finally, the Fifth Circuit concluded that their decision prevented a rush toward multi-jurisdictional litigation and the possibility of inconsistent judgments. Given these general policies and their determination of the ownership of the alter ego cause of action, the Fifth Circuit held that Eastway's state cause of action was stayed.

As noted above, Appellants contend that the Bankruptcy Court erred in determining that the legal principles of *S.I. Acquisition* did not apply. Initially, Appellants argue that "this case is functionally identical to the situation in *S.I. Acquisition* and presents the same *policy* issues." (Brief of Appellants Rutger Schimmelpenninck and Wouter J.P. Jongepier, as Curators of the Estate of Harris Adacom Corporation B.V., at 18). Specifically, Appellants contend that the State Law case should be stayed because Byrne's single business enterprise and alter ego claims are property of the HACBV Bankruptcy Estate. *Id.*, at 19. For the reasons discussed below, the Court agrees with the Appellants.

## 1. BYRNE'S SINGLE BUSINESS ENTERPRISE AND ALTER EGO CLAIMS

In Count Three of Plaintiff's Fourth Amended Original Petition, Appellee sets forth his single business enterprise and alter ego claims. (Petition in a Case Ancillary to a Foreign Proceeding and Re-

quest for Declaratory and Injunctive Relief Pursuant to Section 304 of the Bankruptcy Code Ex. C, at 16). In this count, Appellee alleges that HANS was not operated as a distinct business entity separate from HAC or HACBV. Rather, Appellee contends that HAC and HACBV integrated HANS' and other affiliates' resources with their own to achieve a common business purpose. *Id.* Under the single business enterprise theory, if corporations are not operated as distinct entities, but rather integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose. *Old Republic Insurance Company v. Ex–Im Services Corp.*, 920 S.W.2d 393, 395–396 (Tex.App.—Houston [1st Dist.] 1996, no writ) (citing *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 844 (Tex.App.—Houston [1st Dist.] 1987, no writ)). Alternatively, Byrne alleges that HANS and HACBV were alter egos of each other. (Petition in a Case Ancillary to a Foreign Proceeding and Request for Declaratory and Injunctive Relief Pursuant to Section 304 of the Bankruptcy Code Ex. C, at 17). An alter ego remedy is based upon equitable concerns, and applies when there is such an identity, or unity between a corporation and an entity such that all separateness between the parties has ceased and failure to disregard the corporate form would be unfair or unjust. *S.I. Acquisition Inc. v. Eastway Delivery Serv., Inc.*, 817 F.2d at 1152 (citations omitted).

As the main argument in support of their contention that the Bankruptcy Court erred in determining that Appellee's single business enterprise and alter ego claims were not property of the HACBV Bankruptcy Estate, Appellants maintain that the Fifth Circuit's rationale in *S.I. Acquisition* should control in the present action because the alter ego claim asserted

in that case is functionally identical to Appellee's single business enterprise claim. (Petition in a Case Ancillary to a Foreign Proceeding and Request for Declaratory and Injunctive Relief Pursuant to Section 304 of the Bankruptcy Code, at 18). Specifically, Appellants claim that HANS is not independently liable to Byrne, but rather that Byrne is using the single business enterprise and alter ego claims in an attempt to recover an alleged obligation from HACBV. *Id.* Further, Appellants assert that the "case is nothing more than Byrne attempting to obtain access to HANS's assets to satisfy his claim against the bankrupt HACBV." *Id.,* at 19. Given that single business enterprise and alter ego are both recovery theories whereby one entity can be held liable for the obligations of another, Appellants argue that the *S.I. Acquisition* rationale should apply to the present action, and Appellee's single business enterprise claim and alter ego claims should be considered the property of HACBV's Bankruptcy Estate.

Not surprisingly, Appellee disagrees, and argues that *S.I. Acquisition* is inapplicable to their claims. (Appellee's Brief, at 7). First, Appellee asserts that the single business enterprise claim in the present action is a completely distinct and separate theory from the alter ego theory addressed in *S.I. Acquisitions. Id.* Rather than being based upon vindication of injury to a corporation caused by improper actions of control persons, Appellee points out that the single business enterprise theory applies where corporations integrate resources to achieve a common business purpose. Appellee contends that in *S.I. Acquisitions* the Fifth Circuit's determination that Eastway's alter ego claim belonged to the bankruptcy estate was premised on the traditional Texas alter ego law policy that the corporate veil will be pierced to hold accountable a control entity that misuses the corporate form. (Appellee's Surreply Brief, at 3), which that In light of the differences between the two theories, Appellee concludes that the Fifth Circuit's rationale in *S.I. Acquisitions* is

inapplicable to their single business enterprise claim.

While Appellant goes to great lengths to analogize the single business enterprise claim and the alter ego claim, the argument fails to explain why Appellee's single business enterprise claims should be considered HACBV's property. In *S.I. Acquisition,* the Fifth Circuit explained that, under Texas law, the alter ego right of action was property of SIA's Bankruptcy Estate. As discussed above, Texas law permits a corporation to pierce its own corporate veil and hold accountable those who have misused the corporation, in order to meet its corporate obligations. In *S.I. Acquisition,* SIA, the misused company, "owned" the right of action against its parent company that had been unlawfully controlling it. *See S.I. Acquisition,* 817 F.2d 1142. In the present action, Appellants fail to explain, or point to any case law which indicates how a component entity involved in a single business enterprise has a cause of action against one of the other component members. While it is arguable that a component entity of a single business enterprise has a cause of action against those controlling it, there is no indication that HACBV was in any way controlled or manipulated by HANS. Therefore, in the absence of any indication that HANS was the entity controlling the single business enterprise, the Court is not persuaded that Appellee's single business enterprise claim is property of HACBV's Bankruptcy Estate.

In *S.I. Acquisition,* the Fifth Circuit examined Texas law on the alter ego remedy in great detail in order to determine whether this remedy could be considered part of the SIA's Bankruptcy Estate. *See S.I. Acquisition, Inc.,* 817 F.2d at 1151–1153. In doing so, the Fifth Circuit explained that under Texas law, an alter ego remedy is one specific method of piercing the corporate veil. *Id.,* at 1152 *(citing Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986), *superseded on other*

*grounds by* TEX.BUS.CORP. ACT ANN. art. 2.21 (West Supp.1996)). However, because piercing the corporate veil is an equitable doctrine, Texas takes a fact-specific approach which focuses on equity. *Castleberry,* 721 S.W.2d at 273. Consequently, Appellant's argument that Appellee's remedy is no different from the legal theory asserted in *S.I. Acquisition* is not determinative. Rather, the Court must examine the facts in the present case in order to determine if they warrant the application of this equitable doctrine.

While this case and *S.I. Acquisition* both contain claims based on alter ego, upon closer examination, it becomes clear that the immediate action presents a much different scenario than that faced by the Fifth Circuit. In *S.I. Acquisition,* the subsidiary, SIA, was the debtor in bankruptcy, and the creditor, Eastway, was attempting to continue the litigation against SIA's parent company based on the alter ego theory. In the present action, HACBV, the parent corporation, is the debtor in bankruptcy, and Appellee is attempting to continue litigation against HANS, the subsidiary. Given this factual difference, the rationale supporting the Fifth Circuit's determination that the alter ego claim was property of the bankrupt estate in *S.I. Acquisition* would appear inapplicable to the present situation.

In *S.I. Acquisition,* the Fifth Circuit stated that the question of greatest importance in that case, was whether under Texas law a corporation could assert an action against itself based on alter ego. *Id.,* at 1152. In so stating, however, the court noted that "the predominate policy of Texas alter ego law is that the control entity that has misused the corporation form will be held accountable for the corporation's obligations." *Id.* (*citing Castleberry,* 721 S.W.2d at 272; *see also Valdes v. Leisure Resource Group, Inc.,* 810 F.2d 1345, 1353 (alter ego doctrine applies to

hold dominant entity responsible for subservient company's debt since dominant entity was responsible for creating the debts)). In the present action, however, it is the parent corporation, HACBV, which asserts that the alter ego claim is the property of its Bankruptcy Estate. Consequently, a finding for Appellants would lead to the odd conclusion that the entity alleged to have abused the corporate form, HACBV, has the right to pierce its own corporate veil in order to recover from itself. In other words, Appellants argue that the parent corporation, HACBV, who Appellee alleges misused its subsidiary HANS, owns the right to pierce HANS' corporate veil in order to assert a claim against itself. While a corporation does have a right to bring an action based on alter ego against itself, a court's purpose in cases of this nature is to prevent use of the corporate entity as a cloak for fraud or illegality or to an injustice. *Gentry v. Credit Plan Corp.,* 528 S.W.2d 571, 575 (Tex.1975). In light of Appellee's allegation that HACBV is the controlling entity, a determination that the alter ego remedy is the property of HACBV's Bankruptcy Estate would, in this context, undermine the equitable principles behind the doctrine. Consequently, the Court rejects Appellants' assertion the that alter ego claim is property of HACBV's Bankruptcy Estate.

## 2. BANKRUPTCY PRINCIPLES

Appellants next argue that Bankruptcy Court's decision contravenes the final prong of the analytical scheme set up by the Fifth Circuit in S.I. ACQUISITION.[2] As noted above, the third guiding principle in the *S.I. Acquisitions* is that "in applying the above rules we do so by keeping in mind the Bankruptcy Code's general policies of securing and preserving the debtor's property and of ensuring equal distribution of the debtor's assets to similarly-

---

2. Neither Appellants nor Appellees assert that the second principle set forth in the S.I. Acquisitions is applicable to the present action.

*See S.I. Acquisition,* 817 F.2d at 1151. Accordingly, the Court does not address the applicability of this principle.

situated creditors." *S.I. Acquisition,* 817 F.2d at 1150. As discussed above, however, it would be inconsistent with the policies supporting the Texas' single enterprise and alter ego doctrines to a find that HACBV, the parent corporation alleged to have abused the corporate form, "owns" the right to assert equitable claims against itself. Therefore, notwithstanding any Bankruptcy Code policies which would militate in favor of applying the stay in this case, the Court can find no support for the proposition that the stay should be applied to prevent litigation of claims not found to be property of the debtor's estate. In light of the determination that the single business enterprise and alter ego claims are not property of the HACBV Bankruptcy Estate, the Court concludes that the Bankruptcy Court's decision was consistent with the analytical scheme set forth in *S.I. Acquisition.*

## IV. APPELLANTS REQUEST FOR INJUNCTIVE RELIEF

In their next point of error, Appellants maintain that the Bankruptcy Court erred by denying the injunctive relief requested in their § 304 petition. Specifically, Appellants requested injunctive relief on two grounds: 1) an injunction is necessary to protect the property of the HACBV Bankruptcy Estate; and 2) an injunction is necessary to prevent litigation against the HACBV Bankruptcy Estate. (Brief of Appellant Rutger Schimmelpenninck and Wouter J.P. Jongepier, as Curators of the Estate of Harris Adacom Corporation B.V., at 23). With respect to the first basis for injunctive relief, Appellants argue that "[b]ecause the HACBV Veil Piercing Theories are property of the HACBV Bankruptcy Estate, the Bankruptcy Court should have enjoined the continued prosecution of these actions by Byrne." *Id.,* at 25. In light of the determination that Appellee's single business enterprise and alter ego claims are not property of the HACBV Bankruptcy Estate, the Court does not find this argument persuasive.

As its second basis, Appellants argue that the Bankruptcy Court should have granted the request for injunctive relief under § 304(b)(1)(A), because "the Byrne lawsuit is *in essence* the prosecution of an action against a foreign debtor." The Court notes, however, that Appellants have cited no case to support this position. Rather, Appellant simply relies on its argument that despite not being named as a defendant in the State Court Lawsuit, the action is actually against HACBV. Section 304(b)(1)(A) states:

> (b) . . . . the court may—
>
> (1) enjoin the commencement or continuation of—
>
>> (A) any action against—
>>
>>> (I) **a debtor** with respect to property involved in such foreign proceeding . . . .

Given that the debtor is not named as a party to the suit, combined with the lack of any case law to support this contention, the Court finds that the Bankruptcy Court did not err in denying Appellants' request for injunctive relief.

## V. THE HANS INJUNCTION

Finally, Appellants assert that the Bankruptcy Court erred in enjoining HANS from transferring funds to HACBV until the resolution of the State Court Lawsuit. Appellants contend that Bankruptcy Court abused its discretion by granting injunctive relief when it was "(I) not requested by any pleadings; (ii) not requested by any party at the hearing; (iii) not supported by any evidence produced by any party; and (iv) not supported by the judge's findings of fact and conclusions of law." (Brief of Appellant Rutger Schimmelpenninck and Wouter J.P. Jongepier, as Curators of the Estate of Harris Adacom Corporation B.V., at 35). While Appellants correctly point out that Appellee's did not affirmatively set forth a request for injunction in their answer to Appellants' petition, count 8 of Appellee's Fourth Amended Petition in the Byrne Lawsuit did assert a request for

injunctive relief. In addition, Appellee's Fourth Amended Petition was included as an exhibit to Appellants' petition. Further, Appellants' petition sought to enjoin the continuation of the State Court Lawsuit. (Petition in a Case Ancillary to a Foreign Proceeding and Request for Declaratory and Injunctive Relief Pursuant to Section 304 of the Bankruptcy Code Ex. C). Initially, a bankruptcy court is granted broad latitude to fashion appropriate remedies in § 304 proceedings, and the guidelines of § 304 are designed to give a court "maximum flexibility" to handle ancillary proceedings. *Koreag, Controle et Revision S.A. v. Refco F/X Associates, Inc.,* 961 F.2d 341, 348 (2nd Cir.1992). Moreover, with respect to this section, "the court is free to broadly mold appropriate relief in a mere blank check fashion." *In re Culmer,* 25 B.R. 621, 624–625 (Bankr.S.D.N.Y.1982). In light of the broad flexibility afforded the Bankruptcy Court in dealing with ancillary proceedings, and the fact that Appellants' petition sought to enjoin the continuation of the State Court Lawsuit in which Appellee affirmatively seeks injunctive relief, the Court concludes that the Bankruptcy Court did not abuse its discretion in granting the injunction against HANS.

### CONCLUSION

For the reasons stated above the Court concludes that Appellee's motion for leave to file surreply should be GRANTED, and the Bankruptcy Court's judgment should be AFFIRMED.

**So Ordered.**

