09-0482-cv
Rochester Gas & Elec. Corp. v. GPU, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10th day of December, two thousand nine.

PRESENT:  JOHN M. WALKER, JR.,
          JOSEPH M. McLAUGHLIN,
          REENA RAGGI,
                    *Circuit Judges.*

-------------------------------------------------------------------

ROCHESTER GAS AND ELECTRIC
CORPORATION,
          *Plaintiff-Counter-Defendant-Appellee*,

                    v.                                    No. 09-0482-cv

GPU, INC.,
          *Defendant-Counter-Claimant-Appellant.*

-------------------------------------------------------------------

APPEARING FOR APPELLANT:    JOHN F. STOVIAK (Cathleen M. Devlin, Christine M. Pickel, Christina M. Deeney, *on the brief*), Saul Ewing LLP, Philadelphia, Pennsylvania.

APPEARING FOR APPELLEE:     WOODY N. PETERSON (David L. Elkind, Geoffrey M. Long, *on the brief*), Dickstein Shapiro LLP, Washington, D.C.

Appeal from the United States District Court for the Western District of New York (Jonathan W. Feldman, *Magistrate Judge*).[1]

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment and order of the district court entered on January 6, 2009, and March 31, 2009, respectively, are AFFIRMED.

Defendant GPU, Inc. ("FirstEnergy")[2] appeals from a judgment in favor of plaintiff Rochester Gas and Electric Corp. ("RG&E") entered after a bench trial on RG&E's suit under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., to recover costs incurred during the voluntary cleanup of two manufactured gas plants. FirstEnergy argues that the district court (1) misapplied established principles of New York law in allowing RG&E to pierce its own corporate veil; (2) improperly considered and adopted the legal conclusions of RG&E's expert on corporate governance; (3) erred in concluding that FirstEnergy was derivatively liable under CERCLA as the corporate successor to Associated Gas and Electric Company ("AGECO"), RG&E's former corporate parent; and (4) erred in concluding that AGECO's bankruptcy did not extinguish RG&E's CERCLA claim. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to

---

[1] The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] GPU, Inc., merged with FirstEnergy Corp. in 2001.

explain our decision to affirm.

1.    Standards of Review

"We review the district court's findings of fact after a bench trial for clear error and its conclusions of law de novo." Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 38-39 (2d Cir. 2009) (internal quotation marks omitted). In reviewing for clear error, we will not second-guess the trial court's credibility assessments or its choice between permissible competing inferences. See Amalfitano v. Rosenberg, 533 F.3d 117, 123 (2d Cir. 2008). We review de novo mixed questions of law and fact and the district court's use of facts "to draw conclusions of law, including a finding of liability." Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994).

2.    Piercing the Corporate Veil

CERCLA provides that any corporation that "owned or operated any facility" from which hazardous materials were released is liable for costs incurred by any other person or corporation that cleans up the contamination pursuant to a government-approved plan. See 42 U.S.C. § 9607(a)(2), (a)(4)(B). A parent corporation can be held derivatively liable as the effective owner/operator of a subsidiary's facility where circumstances justify piercing the subsidiary's corporate veil. See United States v. BestFoods, 524 U.S. 51, 63-64 (1998). In New York, a court may disregard the corporate form if (1) the parent corporation so dominates the subsidiary as to render it "a mere instrumentality of the parent," (2) the parent

3

uses its control "to commit fraud or other wrong," and (3) "the fraud or wrong results in an unjust loss or injury to plaintiff." Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc. 933 F.2d 131, 138 (2d Cir. 1991) (internal quotation marks omitted).[3] FirstEnergy argues that veil piercing was unwarranted in this case because the district court failed to find the required link between AGECO's domination of RG&E and the coal tar contamination at RG&E's plants. See Bedford Affiliates v. Sills, 156 F.3d 416, 432 (2d Cir. 1998) ("[A] finding that [defendant's] corporate domination caused the contamination at the Site must be made . . . ."); Morris v. N.Y. State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1161, 82 N.Y.2d 135, 141-42 (1993) ("[D]omination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required."). We are not persuaded.

The district court found that coal tar was an inevitable byproduct of RG&E's manufactured gas production; that leakage and soil contamination were "inherent" in the storage methods used at the relevant time; and that AGECO so dominated RG&E that "the actions of RG&E were the actions of AGECO" during the period in question. Rochester Gas & Elec. Corp. v. GPU, Inc., No. 00-cv-6369, slip op. at 68 (W.D.N.Y. Aug. 8, 2008). Under these circumstances, a decision to produce gas was, in effect, a decision to pollute, and that decision to cause harm was effectively AGECO's. The district court's factual findings thus

---

[3] The Supreme Court has expressly declined to decide "whether, in enforcing CERCLA's indirect liability, courts should borrow state law, or instead apply a federal common law of veil piercing." United States v. BestFoods, 524 U.S. at 63 n.9. We need not reach the issue, as FirstEnergy's challenge fails whichever law applies.

4

amply supported its conclusion that there was a "direct nexus" between AGECO's domination and coal tar contamination at the RG&E plants. Id. at 67.

FirstEnergy argues further that New York law prohibits a subsidiary corporation from piercing its own corporate veil to reach its parent. The argument overlooks the flexible nature of New York's veil-piercing doctrine, which may be employed "whenever necessary to prevent fraud or to achieve equity." Morris v. N.Y. State Dep't of Taxation & Fin., 623 N.E.2d at 1160, 82 N.Y.2d at 140 (internal quotation marks omitted); see also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d at 139 (observing that application of veil-piercing factors "to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case" (internal quotation marks omitted)).

Like the district court, we conclude that the circumstances of this case justify veil piercing given RG&E and AGECO's evolution into wholly distinct entities now looking back across decades to the period when RG&E was dominated by its parent. In short, this case is not akin to Corcoran v. Frank B. Hall & Co., in which the Appellate Division observed that "a suit by a viable corporate entity seeking to pierce its own veil is the equivalent of a suit by a corporation for the benefit of its shareholders brought against its shareholders, an absurdity." 149 A.D.2d 165, 174, 545 N.Y.S.2d 278, 283 (1st Dep't 1989). Rather, as the

5

district court aptly concluded, "RG&E's current posture is more akin to an injured third party than a subsidiary of a parent." Rochester Gas & Elec. Corp. v. GPU, Inc., No. 00-cv-6369, slip op. at 69-70. Indeed, if a third party, such as the government, may pierce a subsidiary's corporate veil to impose CERCLA liability on a dominating parent, see United States v. BestFoods, 524 U.S. at 55, it is hard to see why a company that voluntarily cleans up contamination caused by its former parent (through its then-domination of the company) should be barred from seeking similar recovery. To preclude a company from piercing its own veil in such circumstances would run directly counter to CERCLA's twin goals of "encouraging the timely cleanup of hazardous waste sites and placing the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." Consol. Edison Co. of N.Y. v. UGI Utils., Inc., 423 F.3d 90, 94 (2d Cir. 2005) (internal quotation marks and alterations omitted); see also Schenley Distillers Corp. v. United States, 326 U.S. 432, 437 (1946) (observing that "corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose").

Accordingly, we conclude that the district court properly pierced the corporate veil between RG&E and AGECO to achieve equity on the unusual facts of this case.

### 3. RG&E's Expert

FirstEnergy faults the district court's reliance on RG&E's expert, Professor Jonathan R. Macey, in conducting its veil-piercing analysis. We are not persuaded. District courts

enjoy broad discretion in admitting expert testimony, and we will reverse only for manifest error. See Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213 (2d Cir. 2009). The district court may admit expert testimony "in the form of an opinion or otherwise" when the district court concludes that it "will assist the trier of fact" – in this case the court itself – "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Here, after studying the historical record, Macey testified about RG&E's corporate structure and evidence of dominance by AGECO. FirstEnergy does not point to any specific portions of Macey's testimony that impermissibly stated legal conclusions. Moreover, the district court clearly understood the limits of Macey's role, observing that it was for the court alone to determine whether the facts met the standard for piercing the corporate veil. On this record, we detect no manifest error in the district court's admission and use of Macey's testimony.

4.    Successor Liability Under CERCLA

FirstEnergy submits that the district court erred in imposing CERCLA liability on FirstEnergy as the successor to AGECO despite the bankruptcy reorganization of AGECO and GPU's later divestment of RG&E to comply with the Public Utility Holding Company Act. The argument fails in light of record evidence that AGECO survived the bankruptcy, changed its name to GPU Corp., and continued in existence. See Certificate of Consolidation, Jan. 10, 1946, at ¶ 3 ("The consolidated corporation is one of the constituent

7

corporations, namely Ageco, and not a new corporation. The existence of Ageco shall continue for all purposes whatsoever after the consolidation and merger . . . ."). The record further indicates that, in the years following the bankruptcy, GPU continued to operate from AGECO's corporate headquarters, held itself out as the successor of AGECO, and claimed RG&E as a wholly-owned subsidiary until 1949, when GPU sold RG&E. In light of this factual record, we detect no error in the district court's determination that AGECO emerged from bankruptcy as a viable public utility holding company. Nor is there evidence or legal authority to support FirstEnergy's claim that the subsequent sale of RG&E somehow extinguished FirstEnergy's potential liability as direct successor to AGECO.[4]

     5.     CERCLA Liability After the AGECO Bankruptcy

FirstEnergy's argument that the AGECO bankruptcy extinguished any future CERCLA claim is without merit given our precedent holding that a defendant may be liable for claims that did not exist pre-bankruptcy, as where a statute enacted after the bankruptcy creates a new cause of action, even if the claim relates to pre-petition activity. See In re Chateaugay Corp., 53 F.3d 478, 497 (2d Cir. 1995); see also In re Duplan Corp., 212 F.3d

---

[4] FirstEnergy urges reliance on Interstate Power Co. v. Kansas City Power & Light Co., 909 F. Supp. 1241 (N.D. Iowa 1993), but, in addition to lacking precedential weight, the case is inapposite. Interstate Power declined to impose successor liability on a pre-existing company that received assets following an SEC-mandated liquidation, in a context where the acquiring company did not hold itself out as the successor to, share the same offices or employees with, or produce the same product as the acquired entity. Id. at 1256-57, 1276-77, 1282. None of these facts is present in this case.

144, 151 (2d Cir. 2000) ("CERCLA claims arise for purposes of bankruptcy at the earliest on the date that CERCLA became effective, December 11, 1980."). FirstEnergy's argument that the claim in this case is a veil-piercing claim that existed before the bankruptcy fares no better, as veil piercing is not "a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." Morris v. N.Y. State Dep't of Taxation & Fin., 623 N.E.2d at 1160, 82 N.Y.2d at 141.

We have considered FirstEnergy's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, Clerk of Court
>
>
> By:_____

9