FABE, Justice,
dissenting.
I. - INTRODUCTION
Because I am convinced that allowing Knowles's claims to proceed outside of bank-ruptey would subvert the purposes of the Bankruptey Code by dissipating the property of the debtor and giving priority to Knowles's claim over the claims of other creditors, I respectfully dissent. In my view, Knowles's veil-piercing claim against Brown was property of the bankruptcy estate. The estate therefore had exclusive standing to bring that claim in bankruptcy court. Knowles's lack of standing was made permanent after the bankruptcy court confirmed the reorganization plan. I therefore conclude that Knowles did not have standing to assert his *935 claim in state court, and his case should have been dismissed. Moreover, the court's decision to allow Knowles to bring his veil-piercing claim against Brown in state court, outside of bankruptcy, threatens to deprive small business owners of the protections of the bankruptey code, particularly in light of our weak test for piercing the corporate veil. The court's reaffirmance of the disjunctive test for piercing the corporate veil will result in "Mom and Pop" business owners being personally lable for a bankrupt corporation's debts even when there is no evidence of fraud, misconduct, or abuse of the corporate form. The court's decision could result in a rush to the state courthouse any time a small business declares bankruptcy.
II. DISCUSSION
A. A Bankruptcy Trustee[1] Has Standing To Bring Claims Belonging To The Debtor Corporation.
A Chapter 11 bankruptcy trustee is the representative of the bankrupt estate and has the capacity to sue and be sued.[2] The trustee is charged with collecting and reducing to money the property of the estate.[3] Once a bankruptcy proceeding has begun, § 362(a)(8) of the Bankruptcy Code[4] operates as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[5] With the exception of exclusions not relevant to this case, the property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." [6] This language is construed broadly and includes the debtor's causes of action,[7] which should be brought by the trustee in bankruptcy court.[8] But "[the trustee may assert only claims belonging to the debtor corporation and has no standing generally to sue third parties on behalf of the estate's creditors." [9] Thus the trustee "stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." [10]
B. If The Trustee Has Standing To Bring A Claim, That Standing Is Exclusive.
"When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim." [11] The trustee retains *936 exclusive standing to bring a claim unless the trustee abandons the claim with leave of the bankruptey court, or the bankruptey court allows a third party to pursue a claim on behalf of the trustee.[12] If the estate in this case did have standing to bring an alter ego claim against Brown, then it was error not to dismiss Knowles's state-court veil-pierecing action.
C. State Law Determines Whether A Claim Belongs To The Trustee Or To A Creditor.
The United States Supreme Court held in Butner v. United States that the seope of property rights held by a bankruptey trustee, like the scope of all property rights, is a question of state law:
Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.! [13] Because a cause of action is a type of property within the meaning of the Bank-ruptey Code,[14] whether a veil-piercing claim against Brown belongs to the estate in this case is a matter of Alaska law. Federal circuit courts have consistently acknowledged that whether a bankruptcy trustee has exclusive standing to bring a veil-piercing claim against an alleged alter ego is a matter of state law.[15] In Ahcom, Lid. v. Smeding for example, the Ninth Cireuit Court of Appeals, citing Butner, concluded that "state law determines whether a claim belongs to the trustee or to the creditor."[16] We should therefore apply Alaska law to determine whether the estate had standing-and thus exclusive standing-to bring a veil-piereing claim against International Steel.
The court today apparently agrees that "which legal claims are property of the es *937 tate [is] a matter of state law.[17] Nevertheless, the court repeatedly and almost exclusively cites federal cases to support the contention that a claim eannot belong to the trustee unless it alleges direct harm to the corporation.[18] The court devotes only a single conclusory sentence to Alaska standing doctrine.[19] To the extent that the court is suggesting that federal law is relevant to whether a trustee has standing to bring a claim in Alaska, that view is clearly incorrect and conflicts with the holdings of the Supreme Court in Butner[20] and the Ninth Circuit in Akcom.[21] In my view, International Steel had standing under Alaska law to pursue Brown's personal assets in satisfaction of its corporate debts.
D. The Estate Had Standing To Bring A Veil-Piercing Claim Against International Steel In Bankruptcy Court.
"Standing is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions." [22] The plaintiff must have a "sufficient personal stake" in the outcome of the controversy, but this is not a high bar: "[An identifiable trifle is sufficient to establish standing to fight out a question of principle." [23]
In a single sentence discussing Alaska standing doctrine, the court concludes that International Steel did not have standing to bring a .veil-piercing claim in bankruptcy court because "[iln Alaska if a plaintiff fails to assert a legal injury entitling the plaintiff to relief, the plaintiff has no legal claim and the suit must be dismissed." [24] But we have never before decided whether an alter ego's control of a corporation constitutes a legal injury entitling the corporation to relief.
To support its statement, the court cites three Alaska cases: Neese v. Lithia Chrysler Jeep of Anchorage, Inc.[25] (discussing a citizen's standing to bring a class action lawsuit against an automobile dealership for failing to disclose information about its vehicles); Keller v. French[26] (discussing standing of senators to challenge a legislative investigation); and Brause v. State, Department of Health & Social Services[27] (discussing a same-sex couple's standing to challenge the denial of certain benefits). But these cases simply require that a party have sufficient interest in the case to satisfy the standing requirement. They are clearly distinguishable from the present case and do not answer the question whether a debtor-in-possession has an interest in bringing a veil-piercing claim against itself to recover the assets of an alleged alter ego.
Instead of relying on Alaska law, the court cites federal cases for support, many of which interpret California law.[28] But although precedent from other jurisdictions can sometimes be useful when deciding issues of first impression, it is inconclusive in this case. Many federal circuit courts have held that the bankruptey trustee has standing to bring a veil-piercing claim if the "claim is a general one, with no particularized injury arising from it, and if that elaim could be brought by any creditor of the debtor.[29]" If *938 the claim could only be asserted by a particular creditor, then the claim is not general.[30] In this case, Knowles's alter ego claim was a general one that could have been brought by any creditor. These courts would conclude that the debtor-in-possession had exclusive standing to bring a veil-piercing claim in bankruptcy court. Other courts have held that a trustee has standing to bring a veil-piercing claim only if the trustee claims that the alleged alter ego has harmed the corporation directly-for example, by looting corporate assets.[31] There does not appear to be a clear majority position.
I would look instead to the equities of the case. Piercing the corporate veil is an equitable exercise, and therefore whether a particular party has an interest in making such a claim is an equitable question.[32] My analysis is informed by the purposes of the Bankruptcy Code.[33] The equities of this case convince me that the debtor-in-possession had an interest in piercing its own veil to hold Brown accountable for the debts of International Steel.
In this case, Knowles attempted to cireum-vent the protections of the Bankruptey Code by trying to achieve in state court what he had been denied in bankruptcy court. Particularly troubling is the prospect that each of International Steel's creditors could bring a similar state-court veil-piereing claim against Brown. The facts that Knowles alleged to justify piercing the corporate veil were not particular to him or his injury. Knowles alleged generally that Brown had taken "actions in disregard of the corporate entity" and that "International Steel was a mere instrumentality or alter ego of Edward Brown." But those same facts could be alleged to hold Brown personally liable to every other creditor of International Steel.[34] I conclude that if Knowles's "action based upon alter ego may proceed completely outside of bankruptcy, then any creditor ... may do likewise." [35]
I agree with those courts that have found that allowing such claims to be brought outside of bankruptey court would subvert the purposes of the Bankruptey Code.[36] Knowles would be allowed to collect his claim from a pool of assets that should be available to all *939 of International Steel's creditors.[37] And satisfaction of this claim would be "undiluted by the pro-rata distribution between all eredi-tors that would otherwise occur in bankruptcy court." [38] The result would be a multi-jurisdictional rush to judgment that would make the orderly distribution of assets envisioned in the Bankruptey Code impossible.[39] Such a ruling would also promote conflicting judgments such that "one creditor may convince a court or jury that [a corporation and its alleged alter ego) are all one in the same, while another ereditor may not. Problems of collateral estoppel and unfair distribution of debtor assets would clearly abound.[40] I therefore conclude that granting the bankruptcy trustee exclusive standing to assert alter ego claims is necessary in this context to ensure that all similarly situated creditors are treated fairly.[41]
The court's decision to allow veil-piercing claims to be brought by individual creditors outside of bankruptcy also threatens to deprive small business owners of the protections of the bankruptcy code. Today the court reaffirms its allegiance to a permissive disjunctive test for piercing the corporate veil. Under this test, the shareholders of a corporation may be held personally liable for the corporation's debts without a showing of fraud or misconduct merely for exerting improper control over the corporation. Exposing the owners of small "Mom and Pop" businesses to personal liability outside of bankruptey will allow creditors to reach their personal assets to satisfy corporate debts without affording the business owners the protections of bankruptcy proceedings.
I note that we have never before held that a corporation may pierce its own veil under Alaska law. In Roberts v. State, Department of Revenue, we held that self-piercing was impermissible where a corporation's majority shareholder attempted to disavow the corporate form for his own benefit.[42] Our decision did not imply, however, that self-piercing is impermissible in all cireumstances.[43] It is now necessary to consider whether self-piercing is permissible in this cireumstance.
We have stated that we are strongly disposed against disregarding the corporate form and will only allow the corporate veil to be pierced in exceptional cireumstances.[44] But veil-piereing is an equitable doctrine under which "the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy." [45] I would not deny relief under the doctrine in this case based on a merely formal objection to the notion of a corporation piercing its own veil. In my view, corporations should not be prohibited from piercing their own veils in bankruptcy court where equity so demands.[46]
*940 I conclude that the debtor-in-possession had exclusive standing to bring a veil-piere-ing claim against Brown. In my view, Knowles's veil-piercing action against Brown became property of International Steel's estate when International Steel filed its bank-ruptey petition on January 20, 2005. Knowles's action in the superior court should have been stayed on that date under § 362 of the Bankruptcy Code.
E. Knowles Did Not Regain Standing To Pursue A Veil-Piercing Claim In State Court After The Bankruptcy Case Was Dismissed.
Having concluded that the estate had exclusive standing to bring a veil-piercing claim, it is necessary to examine whether the bankruptcy court's dismissal of the case re-vested standing in International Steel's creditors. I conclude that dismissal of the case had no effect on the debtor-in-possession's exclusive standing to bring claims belonging to the debtor.
Citing 11 U.S.C. § 349(b)(8), which, upon dismissal of a bankruptcy case, revests the property of the estate in the entity who owned it immediately prior to the commencement of the case, Knowles contends that upon dismissal of the case, "the Corporation and its creditors returned to their prepetition status." [47] Thus, Knowles argues, the veil-piercing claim was no longer property of the estate and he- was free to assert it against Brown in state court.
But courts have generally concluded that § 349 applies only where a bankruptcy case is dismissed before approval of the reorganization plan.[48] Here, the Plan was confirmed before the case was dismissed. International Steel's veil-piercing claim against Brown vested in International Steel upon confirmation of the Reorganization Plan under 11 U.S.C. § 1141(b), which states that "[except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." [49] The confirmation order made no attempt to restrict the effect of the confirmation as far as property of the estate was concerned. Indeed, it contained a provision "vest[ing] all of the property of the *941 estate in the reorganized Debtor." Accordingly, International Steel's Chapter 11 estate ceased to exist and the veil-piereing claim, along with any remaining property of International Steel's estate, was transferred out of the estate and vested in International Steel.[50] Section 349 had no effect in this case because there was no more property in the estate to return to creditors.[51] I therefore conclude that Knowles did not have standing to assert his veil-piercing claim in state court.
F. The Court's Decision To Allow Knowles To Proceed Outside Of Bankruptcy Is Particularly Troubling Given Its Decision To Reaffirm The Disjunctive Test For Pierec-ing The Corporate Veil.
In my view, the court's decision today undermines the policies of the Bankruptcy Code protecting similarly situated creditors by allowing creditors to cireumvent the bankruptcy process by bringing veil-piercing claims in state court. But this decision is made even more troubling by the court's reaffirmation of a permissive disjunctive test for piercing the corporate veil in Alaska.[52]
The adoption of the disjunctive test makes Alaska a significant outlier from the overwhelming majority rule.[53] And when the court draws a line with Uchitel on one side and misconduct on the other, it de-empha-sizes the role of misconduct in the Uchitel analysis. - Consequently, small businesses and closely held corporations, which by nature are generally going to qualify for some of the Uchitel factors regardless whether they are abusing the corporate form, face a great risk that they can lose the benefit of the corporate form and the protection of bankruptey."[54]
Further, under the disjunctive standard it seems that abuse of the corporate form alone, without any indicia that the shareholder to be targeted had any control over the corporation, would be sufficient to pierce the corporate veil and hold that shareholder lia-bie. If this were true, then a small shareholder of a large corporation could theoretically be liable for corporate misconduct that the shareholder had no part in and likely did not even know about. I therefore believe Alaska should join its sister states by adopting a conjunctive test for piercing the corporate veil that would require a showing of both control and misconduct.
III, CONCLUSION
Because I believe Knowles lacked standing to assert his claim in state court, I respectfully dissent.

. The current case involves a debtor-in-possession, not a bankruptcy trustee. But "[the authority granted to a debtor-in-possession supervising a Chapter 11 case is virtually identical to that granted to a trustee; what differences there are do not affect this case. Thus, our discussion of a trustee's powers is applicable to the role of a debtor-in possession." Kock Refining v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339, 1342 n. 3 (7th Cir.1987) (citing 11 U.S.C. § 1107) (discussing a bankruptcy trustee's standing to bring a veil-piercing claim in bankruptcy court).

. 11 U.S.C. § 323 (2006).

. 11 U.S.C. § 704(a)(1) (2006).

. 11 U.S.C. §§ 101-1330 (2006) ("the Bankruptcy Code").

. 11 U.S.C. § 362(a)(3) (2006).

. 11 U.S.C. § 541(a)(1) (2006).

. United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (quoting H.R. REP. NO. 95-595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323) ("'The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 7Oa(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act."); see also In re Transcolor Corp., 296 BR. 343, 359 (Bankr.D.Md.2003) (noting that § 541(a) "casts a wide net"); Koch Refining v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339, 1343 (7th Cir.1987) (noting that § 541 "offers an expansive definition of property comprising the estate").

. - In re Transcolor Corp., 296 B.R. at 353-54.

. Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1250 (9th Cir.2010) (quoting Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir.2005)) (internal quotation marks omitted).

. Id. (quoting Smith, 421 F.3d at 1002) (internal quotation marks omitted).

. Id.; see also Estate of Spirtos v. One San Bernardino Cnty. Superior Court Case Numbered SPR 02211, 443 F.3d 1172, 1176 (9th Cir.2006) ("'We therefore reaffirm our previous reasoning and that of our sister circuits and hold that the bankruptcy code endows the bankruptcy trustee *936 with the exclusive right to sue on behalf of the estate.").

. See Koch, 831 F.2d at 1346-47 (citing In re Consolidated Bancshares, Inc., 785 F.2d 1249, 1253-54 (5th Cir.1986) and Mitchell Excavators by Mitchell v. Mitchell, 734 F.2d 129, 132 (2d Cir.1984)) (''The trustee may abandon an action to a third party, and that party may then pursue it. However, if the claim is not abandoned by the trustee and a third party attempts to prosecute, such law suits have usually been dismissed."); Dallas Cabana, Inc. v. Hyatt Corp., 441 F.2d 865, 868 (5th Cir.1971) (''The fact that the trustee has failed to prosecute a claim does not permit a would-be plaintiff to bring suit without first petitioning the bankruptcy court for an order authorizing abandonment of the property."); see also Mark L. Prager & Jonathan A. Backman, Pursuing Alter-Ego Liability Against Non-Bankrupt Third Parties: Structuring A Comprehensive Conceptual Framework, 35 ST. LOUIS U. L.J. 657, 677 (1991) (""In the years since the enactment of the Bankruptcy Code, virtually all courts have held that creditors may not pursue against third parties claims that vest in the estate.").

. 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), superseded by statute, United States Bankruptcy Code, Pub.L. 95-598, 92 Stat. 2549 (1978). Although the Bankruptcy Code superseded Butner, the Supreme Court has subsequently reiterated this holding. See Barnhill v. Johnson, 503 U.S. 393, 397-98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

. See note 7 above.

. See, e.g., In re Moore, 608 F.3d 253, 259-60 (5th Cir.2010) (examining whether a veil-piercing cause of action belonged to the bankruptcy estate under Texas law); In re Icarus Holding, LLC, 391 F.3d 1315, 1318 (11th Cir.2004) ("Because standing to assert the alter ego claim is a question of state law in this case, we must review the district court's decision in accordance with Georgia law."); St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 700 (2d Cir.1989) ("'We agree with those courts that have held that the determination of whether a claim may be brought by a creditor of a bankrupt corporation outside of the bankruptcy proceedings depends on an analysis of state law."); Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 135-36 (4th Cir.1988) ("The courts that have confronted the issue whether an alter ego claim can be brought by the trustee have accordingly looked to the nature of that claim under state law. . .. [Whe conclude that under Virginia law an alter ego claim is property of the estate under § 541(a).") (emphasis in original); Kock, 831 F.2d at 1344 ("State law determines whether property is an asset of the debtor."). But see Steinberg v. Buczynski, 40 F.3d 890 (7th Cir.1994) (deciding, without citation to a single state law case, that the bankruptcy trustee did not have standing to bring an alter ego claim).

. 623 F.3d 1248, 1250 (9th Cir.2010) (citing Butner, 440 U.S. at 54-55, 99 S.Ct. 914) (examining California law).

. Op. at 926-27.

. Op. at 924-25.

. Op. at 924-25.

. - Butner, 440 U.S. at 54-55, 99 S.Ct. 914.

. Ahcom, Ltd., 623 F.3d at 1250.

. Law Project for Psychiatric Rights, Inc. v. State, 239 P.3d 1252, 1255 (Alaska 2010) (quoting Keller v. French, 205 P.3d 299, 302 (Alaska 2009)) (internal quotation marks omitted).

. Keller, 205 P.3d at 304-05 (internal quotation marks and citations omitted).

. Op. at 924-25.

. 210 P.3d 1213, 1219 (Alaska 2009).

. 205 P.3d at 305.

. 21 P.3d 357, 359 (Alaska 2001).

. Op. at 924-25.

. Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir.1993) (quoting St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 700-01 (2d Cir.1989)); see also In re Moore, 608 F.3d 253, 258-59 (5th Cir.2010) (reaffirming Matter of S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987)); In re Seven Seas Petroleum, Inc., 522 F.3d 575, 589 (5th Cir.2008); In re Icarus Holding, LLC, 391 F.3d 1315, 1321 (11th Cir.2004), In re Schimmelpenninck, 183 F.3d 347, *938 359-60 (5th Cir.1999); Koch Refining v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339, 1345 (7th Cir.1987); Maiter of SI. Acquisition, Inc., 817 F.2d at 1153-54.

. See Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1252 (9th Cir.2010) (holding that, under California law, a veil-piercing claim against the corporation to hold an alleged alter ego liable for the corporation's contractual debts was a claim particular to the creditor because "California law does not recognize an alter ego claim or cause of action that will allow a corporation and its shareholders to be treated as alter egos for purposes of all the corporation's debts").

. See Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir.2005); Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir.1994); Matter of Educators Group Health Trust, 25 F.3d 1281, 1285 n. 4 (5th Cir.1994).

. See Bangor Punta Operations, Inc. v. Bangor & A.R. Co., 417 U.S. 703, 713, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974).

. See In re Schimmelpenninck, 183 F.3d at 359 ("[When considering whether a creditor's cause of action 'belongs to' the debtor or seeks 'recovery or control' of property of the debtor, the [Bankruptcy] Code's general policies of securing and preserving the debtor's property and ensuring equal distribution of that property to similarly situated creditors should remain a paramount concern.").

. See L.D.G., Inc. v. Brown, 211 P.3d 1110, 1125 (Alaska 2009) (quoting Uchitel Co. v. Telephone Co., 646 P.2d 229, 235 (Alaska 1982)) (recognizing that "the corporate veil may be pierced when a corporation is nothing more than a 'mere instrument' of a shareholder"). The disjunctive test for piercing the corporate veil has been criticized as too permissive. See, e.g., StepHen B. Presser, Prercine Tus Corporate Vem § 2.2, at 124-25 n. 10 (2012).

. Matter of S.I. Acquisition, Inc., 817 F.2d 1142, 1154 (5th Cir.1987); see also Koch Refining v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339, 1345 (7th Cir.1987) ("[TJhe alter ego theory is an equitable, remedial doctrine that may be asserted by any creditor without regard to the specific nature of his relationship with the corporation and its alleged alter ego.").

. See In re Schimmelpenninck, 183 F.3d at 359-60; Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 133 (2d Cir.1993); St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 700-01 *939 (2d Cir.1989); Koch, 831 F.2d at 1346; Matter of S.I. Acquisition, 817 F.2d at 1153-54.

. See Kalb, Voorhis & Co., 8 F.3d at 133.

. Matter of S.I. Acquisition, Inc., 817 F.2d at 1153.

. See id. at 1154.

. Id.

. See Kalb, Voorhis & Co., 8 F.3d at 133; St. Paul Fire & Marine Ins. Co., 884 F.2d at 700-01 (quoting H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6297) ("'When considering the automatic stay provision, the House Report stated that the stay 'provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.' It is plain from this passage that Congress intended to protect all creditors by making the trustee the proper person to assert claims against the debtor. This reasoning extends to common claims against the debtor's alter ego or others who have misused the debt- or's property in some fashion.").

. 162 P.3d 1214, 1220-21 (Alaska 2007).

. See id.

. See L.D.G., Inc. v. Brown, 211 P.3d 1110, 1125 (Alaska 2009) (citing Dole Food Co. v. Patrickson, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003)).

. Bangor Punta Operations, Inc. v. Bangor & A.R. Co., 417 U.S. 703, 713, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974).

. This view is consistent with the Georgia Supreme Court and numerous federal courts that have interpreted state law to allow self-piercing in the context of bankruptcy. See, eg., Baillie *940 Lumber Co. v. Thompson, 279 Ga. 288, 612 S.E.2d 296, 300-01 (2005) (permitting self-piercing actions under Georgia law); Rochester Gas & Elec. Corp. v. GPU, Inc., 355 Fed.Appx. 547, 550-51 (2d Cir.2009) (applying New York law); In re Schimmelpenninck, 183 F.3d 347, 355-56 (5th Cir.1999) (applying Texas law); Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1240 n. 20 (3d Cir.1994) (applying New Jersey law); Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 131-34 (2d Cir.1993) (applying Texas law); St. Paul Fire & Marine Ins. v. PepsiCo, Inc., 884 F.2d 688, 700-01 (2d Cir.1989) (applying Ohio law); Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 136 (4th Cir.1988) (applying Virginia law); In re Landmark Fence Co., Inc., 424 B.R. 461, 463-64 (Bankr.C.D.Cal.2010); In re OODC, LLC, 321 BR. 128, 136-37 (Bankr.D.Del.2005); In re Lee Way Holding Co., 105 B.R. 404, 411-12 (Bankr.S.D.Ohio 1989). Cf. Greater Hammond Cmty. Servs., Inc. v. Mutka, 735 N.E.2d 780, 785 (Ind.2000) (quoting McQuade v. Draw Tite, Inc., 659 N.E.2d 1016, 1020 (Ind.1995)) ("While we have expressed willingness to use our equitable power to disregard the corporate form to prevent fraud or unfairness to third parties, we perceive little likelihood that equity will ever require us to pierce the corporate veil to protect the same party that erected it.") (italics in original) (quotation marks omitted).

. - "Unless the court, for cause, orders otherwise, a dismissal of a [bankruptcy] case ... revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3) (2006).

. Matter of Depew, 115 B.R. 965, 972 (Bankr. N.D.Ind.1989); see also In re Page, 118 B.R. 456, 459-60 (Bankr.N.D.Tex.1990) (" 'In a case under Chapter 11, the estate continues until confirmation of the plan under § 1129, at which time all of the property of the estate vests in the debtor. After that time, the estate is no longer in existence.' Therefore, [§ 349(b)] ... has no impact in this case." (citations omitted) (quoting In re Frank Meador Buick, Inc., 59 B.R. 787, 791 (Bankr.W.D.Va.1986))); United States v. Standard State Bank, 91 B.R. 874, 879 (W.D.Mo.1988) (holding that only property left in the estate at the time of dismissal revested in the original entity); In re Searles, 70 B.R. 266, 270 (D.R.I.1987) (''The few cases that mention subsection 349(b)(3) refer to its applicability only in the context of property or property rights that have not passed out of the bankruptcy estate.").

. 11 U.S.C. § 1141(b) (2006); see also Matter of Depew, 115 B.R. at 972 (citing 11 U.S.C. § 1141(b), (c); In re Grinstead, 75 BR. 2, 3 (Bankr.D.Minn.1985) ("Once a plan of reorganization is confirmed, the bankruptcy estate ceases to exist unless the plan specifically provides otherwise, and all estate property revests in the *941 debtor subject to the terms and conditions imposed by the plan.") (citing 11 U.S.C. § 1141(b)).

. See Matter of Depew, 115 BR. at 972 (citing In re Balogun, 56 B.R. 117, 118 (Bankr.M.D.Ala.1985)) ("By virtue of § 1141(b), any remaining property of the estate was transferred out of the estate and vested in the debtor.").

. See In re Page, 118 B.R. at 459-60.

. Op. at 929.

. See 1 Wiruiam Meape er au, FuetcnEr Crctopebia or tus Law or Private Corporations § 41.30 (perm. ed., rev. vol. 2006) (citing to 38 different states for the proposition that "(there are ... two general elements required by most jurisdictions(:] First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.").

. See Stephen B. Presser, The Bogalusa Explosion, "Single Business Enterprise," "Alter Ego," and Other Errors: Academics, Economics, Democracy, and Shareholder Limited Liability: Back Towards a Unitary "Abuse" Theory of Piercing the Corporate Veil, 100 Nw. U.L.Rev. 405, 408-09 (2006) (explaining that the reasons for the adoption of limited liability were two-fold: (1) to encourage investment in capital-scarce early markets and (2) "to promote republican government" by encouraging economic investment by smaller investors, thus ensuring that not "only the very wealthy could afford to invest in corporations" causing them to become undemocratic plutocracies, and also allowing smaller investors "investment in the community sufficient to enable them to exercise independent judgment in the choice of leaders and public policy").